CINCINNATI BAR ASSOCIATION *v*. FORECLOSURE SOLUTIONS, L.L.C., ET AL.

[Cite as *Cincinnati Bar Assn. v. Foreclosure Solutions, L.L.C.,*

123 Ohio St.3d 107, 2009-Ohio-4174.]

*Unauthorized practice of law — Negotiating with mortgagees to help clients avoid foreclosure — Injunction issued — Civil penalties imposed.*

(No. 2009-0967 —— Submitted July 14, 2009 —— Decided August 26, 2009.)

ON FINAL REPORT by the Board on the Unauthorized Practice of Law of the Supreme Court, No. UPL 07-04.

_____

**Per Curiam**.

{¶ 1} Respondent, Cincinnati Bar Association, filed a complaint charging that respondents, Foreclosure Solutions, L.L.C., and Timothy A. Buckley, engaged in the unauthorized practice of law by providing legal advice to solicited customers facing pending property foreclosures and representing the customers in negotiations to settle with their mortgagees. The Board on the Unauthorized Practice of Law concluded that Foreclosure Solutions and Buckley had practiced law in violation of Ohio licensure requirements and has recommended that we enjoin them from committing further illegal acts and assess jointly and severally against them $50,000 in civil penalties. We agree that respondents engaged in the unauthorized practice of law and that an injunction and civil penalties are warranted.

{¶ 2} The parties filed stipulations of fact and a waiver of hearing pursuant to Gov.Bar R. VII(7)(H). Accepting these filings and supplemental statements from the parties, a panel of three board members found that respondents had engaged in the unauthorized practice of law and recommended

an injunction and $50,000 civil penalty.  The board adopted the panel's findings of fact, conclusions of law, and recommendation.

{¶ 3} The parties have not filed objections under Gov.Bar R. V(8)(B) to the board's report.

**Respondents Engaged in the Unauthorized Practice of Law**

{¶ 4} The board made the following findings of fact:

{¶ 5} "1. Respondent, Timothy Buckley is not admitted to the practice of law in the state of Ohio or any other jurisdiction.  Stip. 4.

{¶ 6} "2. Respondent, Foreclosure Solutions is an Ohio limited liability company.  Foreclosure Solutions has occasionally used the names 'Foreclosure Help One' and 'Foreclosure Solutions USA' in its business.  Stip. 1.

{¶ 7} "3. None of Foreclosure Solutions' employees are licensed to practice in Ohio or in any other jurisdiction.  Stip. 4.

{¶ 8} "4. Respondent Buckley is the founder, President, and sole owner and member of Foreclosure Solutions.  Buckley entered into the joint stipulations in this matter in his capacities as an individual Respondent and as President, sole owner and member of Respondent Foreclosure Solutions, LLC.

{¶ 9} "5. Foreclosure Solutions served homeowners by directing them to set up a savings plan so that money can be saved to negotiate new mortgage terms with lenders.  Stip. 3.

{¶ 10} "6. Foreclosure Solution's [sic] customers in Ohio have each paid between seven hundred dollars ($700.00) and one thousand one hundred dollars ($1100.00) for its services.  Stip. 5.

{¶ 11} "7. Foreclosure Solutions started business in 2003 and since 2003 has had between 12,000 and 14,000 paying customers.  At the time of the filing of the Joint Stipulations, Foreclosure Solutions was not accepting new customers but was closing out approximately 25 customer files.  Stips. 6-7.

{¶ 12} "8.   Foreclosure Solutions marketed its services on internet sites, *www.foreclosure_solutionsusa.net* and *www.program10.com*, in addition to direct mail marketing to Ohio foreclosure defendants.  Stip. 8. Exhibit 'A' of the Joint Stipulations.

{¶ 13} "9.   Agents of Foreclosure Solutions told prospective customers that an attorney and legal services would be furnished to them as part of their fee. Foreclosure Solutions then hired a lawyer for the customer to respond in court to the recently filed foreclosure action.  The client had no choice in the lawyer's selection, and the lawyer was paid a flat fee taken from the seven hundred to one thousand one hundred dollar fee that the customers paid Foreclosure Solutions. Stip. 9.

{¶ 14} "10.  Foreclosure Solutions' agents met with customers to collect the company's fee and had the customer sign a standardized contract, the 'Work Agreement,' containing the basic terms and conditions of the engagement.  The 'Work Agreements' specified that bankruptcy was to be the customers' 'last alternative' in the efforts to save their homes.   Exhibit 'B' of the Joint Stipulations. Stip. 10.

{¶ 15} "11.   Foreclosure Solutions' agents also had customers sign a standardized limited power of attorney appointing Foreclosure Solutions as the customer's attorney-in-fact, which in addition to authorizing the hiring of an attorney, purported to authorize company agents to negotiate on the customer's behalf with creditors.  Stip. 11.

{¶ 16} "12.  The 'Work Agreements' provided that the customer would set up a savings account and deposit a certain amount of money into it on a regular basis. Foreclosure Solutions determined the amount the customers were to periodically deposit in the savings account.  Stip. 12.

{¶ 17} "13.   Foreclosure Solutions would then use that money as a bargaining chip in negotiations that its agents conducted directly with the

mortgage lender on behalf of the customers. These negotiations were intended to prevent the customers, all of whom were defendants in foreclosure lawsuits, from losing their homes to foreclosure. Stip. 13.

{¶ 18} "14. Foreclosure Solutions' agents continued to negotiate directly with the mortgage lenders on behalf of the customers even after the attorney it hired for the customers had entered an appearance in the foreclosure lawsuit. Stip. 14.

{¶ 19} "15. Regardless of whether Foreclosure Solution's negotiations on behalf of the customers were successful, Foreclosure Solutions retained the money paid by the customers. Stip. 15."

{¶ 20} Section 2(B)(1)(g), Article IV of the Ohio Constitution confers on this court original jurisdiction over the "[a]dmission to the practice of law, the discipline of persons so admitted, and all other matters relating to the practice of law." Our jurisdiction thus extends to regulating the unauthorized practice of law, which we do to protect the public from persons and entities purporting to provide legal assistance to others but "who have not been qualified to practice law and who are not amenable to the general discipline of the court." *Union Sav. Assn. v. Home Owners Aid, Inc.* (1970), 23 Ohio St.2d 60, 64, 52 O.O.2d 329, 262 N.E.2d 558. More specifically, we restrict the practice of law to licensed practitioners as a means to "protect the public against incompetence, divided loyalties, and other attendant evils that are often associated with unskilled representation." *Cleveland Bar Assn. v. CompManagement, Inc.,* 104 Ohio St.3d 168, 2004-Ohio-6506, 818 N.E.2d 1181, ¶ 40.

{¶ 21} "The unauthorized practice of law is the rendering of legal services for another by any person not admitted to practice in Ohio under Rule I and not granted active status under Rule VI, or certified under Rule II, Rule IX, or Rule XI of the Supreme Court Rules for the Government of the Bar of Ohio." Gov.Bar R. VII(2)(A). We have defined the practice of law expansively. In Ohio, the

practice of law is not limited to the conduct of cases in court but embraces "the preparation of pleadings and other papers incident to actions," "the management of such actions," and "in general all advice to clients and all action taken for them in matters connected with the law." *Land Title Abstract & Trust v. Dworken* (1934), 129 Ohio St. 23, 1 O.O. 313, 193 N.E. 650, paragraph one of the syllabus.

{¶ 22} In *Cincinnati Bar Assn. v. Mullaney*, 119 Ohio St.3d 412, 2008-Ohio-4541, 894 N.E.2d 1210, we sanctioned lawyers for, among other forms of professional misconduct, aiding Foreclosure Solution's agents in the unauthorized practice of law, a violation of DR 3-101(A) of the former Code of Professional Responsibility. In that case, three lawyers facilitated a widescale operation in which respondents and their agents promised legal assistance to allow thousands of debtors to avoid foreclosure. Respondents hired the lawyers to appear in court and delay pending foreclosure proceedings while the agents, principally nonlawyers, obtained financial information from the customers and negotiated with mortgagees to reinstate the loan.

{¶ 23} Contrary to professional duties and responsibilities, the three lawyers in *Mullaney* did not assess individualized needs of Foreclosure Solutions customers to determine the best course of legal action for relieving their financial distress, including whether to petition for bankruptcy immediately. They instead pursued the single strategy that respondents offered as a resolution – to stall the pending foreclosure proceedings in the hope of the agents' or lawyers' negotiation of a settlement with the mortgagee. By surrendering their professional judgment in this way, the lawyers aided respondents in engaging in the unauthorized practice of law.

{¶ 24} "Counseling debtors in financial crisis as to their best course of legal action requires the attention of a qualified attorney." *Mullaney*, 119 Ohio St.3d 412, 2008-Ohio-4541, 894 N.E.2d 1210, at ¶ 24, citing *Columbus Bar Assn. v. Flanagan* (1997), 77 Ohio St.3d 381, 383, 674 N.E.2d 681 ("The counseling of

a client in financial matters, particularly about his or her choice of remedies under the Bankruptcy Code or whether a bankruptcy proceeding can be avoided, is a serious matter that deserves the attention of a qualified attorney"). Here, however, respondents and their agents implemented a one-size-fits-all plan to protect customers' legal interests when they did not have the qualifications and training required of the legal profession nor were they constrained by the ethical standards with which lawyers must comply. See also *Disciplinary Counsel v. Willard*, 123 Ohio St.3d 15, 2009-Ohio-3629, 913 N.E.2d 960.

{¶ 25} We have repeatedly held that nonlawyers engage in the unauthorized practice of law by attempting to represent the legal interests of others and advise them of their legal rights during settlement negotiations. *Disciplinary Counsel v. Brown*, 121 Ohio St.3d 423, 2009-Ohio-1152, 905 N.E.2d 163, ¶ 17; *Disciplinary Counsel v. Robson,* 116 Ohio St.3d 318, 2007-Ohio-6460, 878 N.E.2d 1042, ¶ 10; *Cleveland Bar Assn. v. Henley* (2002), 95 Ohio St.3d 91, 92, 766 N.E.2d 130; *Akron Bar Assn. v. Bojonell* (2000), 88 Ohio St.3d 154, 724 N.E.2d 401; *Cleveland Bar Assn. v. Moore* (2000), 87 Ohio St.3d 583, 722 N.E.2d 514.

{¶ 26} And we have specifically so held with regard to nonlawyers attempting to advise debtors of their legal rights and the terms and conditions of settlement in negotiations to avoid pending foreclosure or other collection proceedings. *Ohio State Bar Assn. v. Kolodner,* 103 Ohio St.3d 504, 2004-Ohio-5581, 817 N.E.2d 25; *Cincinnati Bar Assn. v. Telford* (1999), 85 Ohio St.3d 111, 707 N.E.2d 462. Accord *In re Ferguson* (Bankr.N.D.Ohio 2005), 326 B.R. 419, 423 ("The unauthorized practice of law occurs when a non-attorney acts as an intermediary to advise, counsel, or negotiate on behalf of an individual or business in an attempt to resolve a collection claim between debtors and creditors").

**{¶ 27}** Finally, we have long ago concluded that laypersons may not insulate themselves from responsibility for engaging in the unauthorized practice of law by using powers of attorney executed by the customers or by simply informing customers facing foreclosure that the layperson is not an attorney and is, therefore, incapable of giving legal advice. *Telford*, 85 Ohio St.3d 111, 113, 707 N.E.2d 462, citing *Akron Bar Assn. v. Miller* (1997), 80 Ohio St.3d 6, 8-9, 684 N.E.2d 288; *Richland Cty. Bar Assn. v. Clapp* (1998), 84 Ohio St.3d 276, 278, 703 N.E.2d 771.

**{¶ 28}** Based on a preponderance of the evidence, therefore, we conclude that respondents engaged in the unauthorized practice of law.[1]

### An Injunction and Civil Penalty Are Warranted

**{¶ 29}** Having found that respondents engaged in the unauthorized practice of law, we accept the board's recommendation for an injunction prohibiting respondents from attempting to represent the legal interests of others or attempting to advise others of the terms and conditions of settlement in negotiations to avoid pending foreclosure proceedings and from engaging in all other acts constituting the unauthorized practice of law.

**{¶ 30}** Pursuant to Gov.Bar R. VII(8)(B), the board also recommends that we assess, jointly and severally, a $50,000 civil penalty against respondents. In making this recommendation, the board weighed factors listed in Gov.Bar R. VII(8)(B) and the supplementary provisions of UPL Reg. 400(F) in aggravation and mitigation of respondents' illegal conduct. The board found that "[a]s set forth in the Joint Stipulations, the Respondents provided the described legal services to 12,000 to 14,000 Ohioans." See Gov.Bar R. VII(8)(B)(2) (attributing

---

1. In reaching this conclusion, we acknowledge the distinction, noted in the amicus curiae brief of the Ohio Attorney General, between nonlawyers permissibly providing financial advice in the course of credit counseling and nonlawyers impermissibly advising debtors as to their best legal remedy in response to the filing of foreclosure proceedings. The minimal factual record and the absence of any developed legal argument in this case, however, prevent us from attempting to refine and definitely resolve the issue.

aggravating effect to "[t]he number of occasions that the unauthorized practice of law was committed"). The board further found:

{¶ 31} "In considering other relevant factors pursuant to Gov.Bar R. VII(8)(B)(5), in evidence of aggravation of any civil penalty being imposed against the Respondents, Respondents benefited from the unauthorized practice of law through the receipt of client fees for the services rendered. UPL Reg. 400[F](3)(d).

{¶ 32} "In evidence of mitigation of any civil penalty being imposed against the Respondents, the Panel has considered and found that the Respondents have essentially ceased to engage in the conduct alleged and have admitted and stipulated to the conduct alleged. * * * UPL Reg. 400(F)(4)(a) and (b).

{¶ 33} "In addition, and in further evidence of mitigation, the record is devoid of any evidence that the clients specifically referenced in this matter were harmed or suffered direct legal or economic consequences due to the activities of the Respondents. Gov. Bar R. VII(8)(B)(4).

{¶ 34} "The Relator has asked the Panel that it recommend a civil penalty against the Respondents, jointly and severally, in an amount equal to the disgorgement of the monies obtained in the course of the unauthorized practice of law. The Respondent has objected to the imposition of any civil penalty. UPL Reg. 400(F)(1)."

{¶ 35} We accept the recommendation of the board. We enjoin respondents Foreclosure Solutions, L.L.C., and Timothy A. Buckley, their officers, agents, employees, successors, and assigns from attempting to represent the legal interests of others or attempting to advise others of the terms and conditions of settlement in negotiations to avoid pending foreclosure proceedings and from engaging in all other acts constituting the unauthorized practice of law. We also order respondents Foreclosure Solutions, L.L.C., and Timothy A. Buckley to pay civil penalties, assessed jointly and severally, in the amount of

$50,000, representing the amount obtained through the unauthorized practice of law. Costs are taxed to respondents.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Taft, Stettinius & Hollister, L.L.P., and Justin D. Flamm, for relator.

Timothy A. Buckley, pro se

Richard Cordray, Attorney General, Benjamin C. Mizer, Solicitor General, Alexandra T. Schimmer, Chief Deputy Solicitor General, and Susan A. Choe, Assistant Attorney General, for amicus curiae, Ohio Attorney General, in support of neither party.

_____