GEAUGA COUNTY BAR ASSOCIATION *v*. PATTERSON.

[Cite as *Geauga Cty. Bar Assn. v. Patterson,*

**124 Ohio St.3d 93, 2009-Ohio-6166.**]

*Attorneys at law — Misconduct — Multiple violations related to aiding the unauthorized practice of law — 18-month suspension with conditional six-month stay.*

(No. 2009-1509 — Submitted September 16, 2009 — Decided December 2, 2009.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 09-018.

_____

**Per Curiam**.

{¶ 1} Respondent, David N. Patterson of Willoughby, Ohio, Attorney Registration No. 0015280, was admitted to the practice of law in Ohio in 1964.

{¶ 2} The Board of Commissioners on Grievances and Discipline recommends that we suspend respondent's license to practice for 18 months, staying the last six months on condition of no further misconduct. The recommendation is based on findings that respondent mishandled a decedent's estate and committed other misconduct by disregarding his duty to exercise independent professional judgment on behalf of clients who were facing foreclosure. We agree that respondent violated ethical duties incumbent on Ohio lawyers and that an 18-month suspension of his license with a conditional six-month stay is appropriate.

{¶ 3} Relator, Geauga County Bar Association, charged respondent with three counts, alleging violations of the Disciplinary Rules of the Code of

Professional Responsibility and the Rules of Professional Conduct.[1] The board considered the case on a consent-to-discipline agreement, filed pursuant to BCGD Proc.Reg. Section 11, in which the parties stipulated to facts and misconduct and proposed the 18-month license suspension and six-month conditional stay. The board accepted the agreement and recommends the jointly proposed sanction.

## Misconduct

### Count One — The Mishandled Estate

{¶ 4} The parties stipulated that respondent prepared for a client in early 2004 a durable power of attorney, a trust, and a will. Respondent and a friend of the client, another woman whom respondent also represented, were appointed cotrustees of the trust, and the will named respondent executor of the client's estate. The client died in June 2004, and that July, the Geauga County Probate Court appointed respondent as executor of her estate.

{¶ 5} In November 2005, the probate court removed respondent as the estate's executor, citing pending and anticipated legal action against his cotrustee, who had apparently misappropriated assets belonging to the estate, and the resulting conflict of interest for respondent. In August 2006, the court followed up by finding that respondent had "neglected to secure estate assets and allowed [his cotrustee] to exercise dominion and control over estate assets to the detriment of the estate."

{¶ 6} According to the court's order, respondent had allowed his cotrustee to "transfer an automobile owned by the decedent to his wife." He had also "permitted [the cotrustee] to pay him $2,500.00 out of estate assets for a debt allegedly owed him by the decedent" without timely submitting the claim to and obtaining the approval of the probate court as required by law. Finally, the order

---

1. Relator charged respondent with misconduct under applicable rules for acts occurring before and after February 1, 2007, the effective date of the Rules of Professional Conduct, which supersede the Code of Professional Responsibility.

noted that respondent had been cited once for failing to file a certificate of service of notice of probate of the will and twice for failing to timely file the inventory for the estate. The court ordered him to reimburse the estate $1,795.40 in fiduciary fees for his neglect.

{¶ 7} We accept respondent's admission that he mishandled this decedent's estate and thereby violated DR 6-101(A)(3) (prohibiting a lawyer from neglecting an entrusted legal matter).

*Count Two — Lapses in Representing Clients in Foreclosure During 2007*

{¶ 8} The parties stipulated to the facts underlying Count Two as follows:

{¶ 9} "Respondent entered into an agreement in June of 2007 to represent customers of Foreclosure Solutions, LLC, a company located in Ohio which purported to serve property owners threatened with foreclosure by helping them to cause their home loan to be re-instated and avoid foreclosure. Pursuant to this agreement, Respondent collected a flat fee of $200.00 for each client in exchange for his representation of them in foreclosure proceedings filed in the Common Pleas Courts of Northeast Ohio.

{¶ 10} "The client had no choice in the Respondent's selection when the Respondent was hired by Foreclosure Solution's Agents. Respondent did not meet with clients of Foreclosure Solutions to determine their objectives or complete financial situation or discover the facts that could be defenses to foreclosure.

{¶ 11} "Respondent did not determine what legal action should be taken in the client's best interest[,] leaving that up to [the] judgment of Foreclosure Solutions.

{¶ 12} "Respondent accepted a portion of the compensation paid to Foreclosure Solutions for their services.

**{¶ 13}** "Respondent's misconduct consisted of his failure to meet directly with the client, the sharing of legal fees with non-lawyers and aiding in the unauthorized practice of law."

**{¶ 14}** We accept respondent's admissions that in representing clients facing foreclosure during 2007, he violated the following Rules of Professional Conduct:

**{¶ 15}** ● 1.2(a) (requiring a lawyer to "abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, [to] consult with the client as to the means by which they are to be pursued");

**{¶ 16}** ● 1.4(a) (requiring a lawyer to (1) promptly inform clients as to matters needing informed consent, (2) reasonably consult with clients about the means to accomplish clients' objectives, (3) keep clients reasonably informed about the status of a matter, (4) comply as soon as practicable with clients' reasonable requests for information, and (5) consult with clients about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by law);

**{¶ 17}** ● 1.4(b) (requiring a lawyer to explain matters to clients to the extent reasonably necessary for clients to make informed decisions regarding the representation);

**{¶ 18}** ● 5.4(a) (with exceptions not relevant here, prohibiting a lawyer from sharing legal fees with a nonlawyer); and

**{¶ 19}** ● 5.4(c) (prohibiting a lawyer from permitting a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering those legal services).

*Count Three — Lapses in Representing a Client in Foreclosure*

*During 2006*

**{¶ 20}** The parties stipulated to the facts underlying Count Three as follows:

**{¶ 21}** "Respondent accepted a referral from Foreclosure Alternatives on June 7, 2006 to represent [a client] in a foreclosure matter pending before the Clermont County Court of Common Pleas * * *. Foreclosure Alternatives is a company which purported to serve property owners threatened with foreclosure by helping them cause their home loan to be re-instated and avoid foreclosure. Respondent collected a flat fee from Foreclosure Alternatives in exchange for his representation of [the client] in the Common Pleas Court of Clermont County.

**{¶ 22}** "[The client] had no choice in the Respondent's selection, when he was hired by Foreclosure Alternative's Agents. Respondent did not meet with [the client] to determine his objectives or complete financial situation or discover the facts that could be defenses to the foreclosure. As a matter of fact, [the client] did not learn Respondent's identity until more than six (6) months after Respondent filed an Answer to the Complaint for Foreclosure in the Clermont County Court of Common Pleas.

**{¶ 23}** "Respondent did nothing to determine what legal action should be taken in [the client's] best interest[,] leaving it up to Foreclosure Alternatives.

**{¶ 24}** "[The client] filed a Voluntary Petition for Bankruptcy in March of 2007 * * * and eventually lost his home.

**{¶ 25}** "Respondent accepted a portion of compensation paid to Foreclosure Alternatives for their services as his fees.

**{¶ 26}** "Respondent's misconduct consisted of his failure to meet directly with the client, the sharing of legal fees with non-lawyers and aiding in the unauthorized practice of law."

**{¶ 27}** We accept respondent's admissions that in representing this client during 2006, he violated the following Disciplinary Rules:

**{¶ 28}** • 2-103(C) (with exceptions not relevant here, prohibiting a lawyer from requesting a person or organization to recommend or promote the use of the lawyer's services as a private practitioner);

**{¶ 29}** • 3-101(A) (prohibiting a lawyer from aiding a nonlawyer in the unauthorized practice of law);

**{¶ 30}** • 3-102(A) (with exceptions not relevant here, prohibiting a lawyer from sharing legal fees with a nonlawyer);

**{¶ 31}** • 6-101(A)(2) (prohibiting a lawyer from handling legal representation without adequate preparation under the circumstances); and

**{¶ 32}** • 7-101(A)(1) (with exceptions not relevant here, requiring a lawyer to seek the lawful objectives of clients).

### Sanction

**{¶ 33}** In *Disciplinary Counsel v. Willard*, 123 Ohio St.3d 15, 2009-Ohio-3629, 913 N.E.2d 960, we considered another lawyer who partnered with a nonattorney organization to represent clients in mortgage-foreclosure proceedings. That association presented the same ills as have respondent's alliances—insufficient attorney-client communication and case preparation, nonattorney promotion of the lawyer's legal services, the aiding of the unauthorized practice of law, and the sharing of legal fees. Together, these failings signal the surrender of an attorney's ability to exercise independent professional judgment on a client's behalf and manifest an overarching breach of the lawyer's duty of loyalty to the client.

**{¶ 34}** We ordered the actual suspension of Willard's license for his infractions, suspending him from practice for one year, but staying the last six months on remedial conditions. Id. at ¶ 31. The parties in this case, however, have agreed that a longer suspension period is warranted because respondent's prior disciplinary record weighs against him. See BCGD Proc.Reg. 10(B)(1)(a).

Respondent received public reprimands for ethical lapses in *Lake Cty. Bar Assn. v. Patterson* (1980)*, 64 Ohio St.2d 163, 18 O.O.3d 382, 413 N.E.2d 840, and *Geauga Cty. Bar Assn. v. Patterson*, 111 Ohio St.3d 228, 2006-Ohio-5488, 855 N.E.2d 871.

**{¶ 35}** We agree that the recommended sanction is appropriate based on the combination of misconduct in this case and respondent's prior disciplinary record. We therefore suspend respondent from the practice of law in Ohio for 18 months; however, the last six months of the suspension are stayed on the condition that respondent commit no further misconduct. If respondent violates the condition of the stay, the stay will be lifted, and he will serve the full suspension period. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Joseph H. Weiss Jr. and Edward T. Brice, for relator.

Koblentz & Koblentz, Richard S. Koblentz, and Bryan L. Penvose, for respondent.

_____