[Cite as *Disciplinary Counsel v. Foreclosure Alternatives, Inc.*, 127 Ohio St.3d 455, 2010-Ohio-6257.]

DISCIPLINARY COUNSEL *v.* FORECLOSURE ALTERNATIVES, INC., ET AL.

[Cite as *Disciplinary Counsel v. Foreclosure Alternatives, Inc.*,

127 Ohio St.3d 455, 2010-Ohio-6257.]

*Unauthorized practice of law — Managing the defense of clients in foreclosure actions and negotiating with the lenders on behalf of the clients — Injunctions issued and civil penalties imposed.*

(No. 2010-1495 — Submitted October 13, 2010 — Decided December 23, 2010.)

ON FINAL REPORT by the Board on the Unauthorized Practice of Law of the

Supreme Court, No. UPL 09-05.

_____

**Per Curiam.**

**{¶ 1}** On June 4, 2009, relator, Disciplinary Counsel, filed a three-count complaint with the Board on the Unauthorized Practice of Law against respondents, Foreclosure Alternatives, Inc. ("FAI"), Kert Alexakis, and Lance Baker, a.k.a. Lance Trester ("Trester" or "Lance"), alleging that respondents engaged in the unauthorized practice of law by soliciting homeowners who were defendants in foreclosure proceedings and offering to manage the defense of the foreclosure actions while negotiating with the lenders. FAI was the business entity engaged in the practices at issue, and Alexakis and Trester were agents and employees of FAI who were involved in those practices.

**{¶ 2}** Two counts of the complaint detail particular instances in which respondent FAI entered into contracts with foreclosure defendants, engaged attorneys for the limited purpose of filing pleadings, and ostensibly acted to resolve the mortgage disputes. In both instances, the homeowners lost their homes, which were sold in foreclosure sales.

**{¶ 3}** The complaint charged, and the board concluded, that respondents had engaged in the unauthorized practice of law by counseling clients on the course of legal action in connection with foreclosure and by undertaking to negotiate on their behalf in the context of foreclosure actions. We adopt the board's finding that respondents engaged in the unauthorized practice of law, and we enjoin them from doing so in the future.

**{¶ 4}** In addition, the board, taking cognizance of the hardship suffered by the clients of FAI, recommends the imposition of civil penalties against Trester in the amount of $2,500 per count, for a total of $5,000, and against FAI and Alexakis jointly and severally in the amount of $7,500 per count, for a total of $15,000. We accept the board's recommendation and adopt the sanctions.

**Factual Background**

*The nature of FAI's business*

**{¶ 5}** FAI, which was incorporated on or about April 19, 2004, by Ronald Trester, is an Ohio corporation located in Hamilton County. Alexakis, who is Ronald Trester's stepson, stated that his mother was the sole shareholder and that Ronald Trester and Alexakis himself were the officers. The company apparently ceased operation late in 2007, but it has not been dissolved, because a lawsuit is still pending against it.

**{¶ 6}** FAI would locate customers by consulting online databases that showed persons who were named defendants in mortgage-foreclosure actions. Through a mailing, FAI would solicit those persons to enter into contracts with FAI under which FAI agreed to file appropriate pleadings in the foreclosure action and negotiate with the lenders in order to achieve a resolution that would avoid both the loss of the home and the filing of bankruptcy.

**{¶ 7}** Clients of FAI were required to pay $850 up front or $900 in two installments, after which they were to provide financial information to FAI and set up a separate account into which they were to make regular deposits until the

account reached a specified amount (in one case, the amount was equal to four months of mortgage payments). The financial information (including a "hardship letter") and the separate account were used by FAI to negotiate a resolution of the dispute with the lender. In the course of representing its clients, FAI would engage one of three attorneys — two licensed in Ohio[1] and one in Indiana — to whom they would assign the responsibility of handling court filings and hearings. The attorneys were typically paid between $125 and $250 for that service, an amount usually paid directly by FAI out of the fee it collected from the client. Once FAI had financial information and documentation that the client had deposited a significant sum in the separate account, FAI would make a proposal to the lender to pay a percentage of the loan delinquency in order to stop the foreclosure and reinstate a monthly payment arrangement.

{¶ 8} None of the shareholders, directors, officers, or employees of FAI was licensed to practice law in any jurisdiction.

*The nature of Trester's involvement*

{¶ 9} Trester[2] is not licensed to practice law in Ohio.

{¶ 10} When Ronald Trester was to be incarcerated for a felony conviction and could no longer run FAI, he first turned to his son Lance to run the company. Lance underwent 15 days of intense training and then began to manage the operation. During his tenure, Lance supervised and directed the employees and operations, including solicitation of business from homeowners, retention of attorneys to represent the customers, and attempts to work with customers and lenders to resolve the past-due amounts or otherwise reinstate the loans.

---

1. Both Ohio attorneys have been disciplined in connection with their involvement with FAI. See *Disciplinary Counsel v. Willard*, 123 Ohio St.3d 15, 2009-Ohio-3629, 913 N.E.2d 960; *Geauga Cty. Bar Assn. v. Patterson*, 124 Ohio St.3d 93, 2009-Ohio-6166, 919 N.E.2d 206, ¶ 8–32.

2. On advice of his father, Ronald Trester, Lance Trester adopted the name "Baker" during his tenure at FAI to avoid being associated with his father's felony conviction.

{¶ 11} One week after Trester left the employ of FAI on September 22, 2006, he started a company named American Foreclosure Professionals, which competed with FAI. American Foreclosure Professionals was in business until approximately November 2008.

*The nature of Alexakis's involvement*

{¶ 12} Kert Alexakis is not licensed as an attorney in Ohio.

{¶ 13} Before 2006, Alexakis was only minimally involved in FAI, which had been run by his stepfather, Ronald Trester. According to Lance Trester, Alexakis was president of FAI but inactive in the company business at the beginning of 2006. When Ronald Trester was convicted and incarcerated in February 2006, he became unable to run the company and tapped his son Lance to operate the business. On September 22, 2006, Lance left the employ of FAI.

{¶ 14} According to Lance Trester, Alexakis ran the company after Lance left. Alexakis met with clients, assembled financial information into client packets, and presented the information to the lenders in order to avoid foreclosure. Alexakis also supervised the activities of the attorneys with respect to court filings. About 20 percent of the time, the attempt to reinstate the loan failed, and the property was sold at a sheriff's sale. When the company ceased operations in December 2007, Alexakis was no longer active in the business.

*FAI's handling of foreclosure No. 1*

{¶ 15} FAI's dealings with the homeowners in Foreclosure No. 1 led to the homeowners' filing a grievance against the attorney used by FAI, John Willard. See *Disciplinary Counsel v. Willard*, 123 Ohio St.3d 15, 2009-Ohio-3629, 913 N.E.2d 960, ¶ 9 (the "foreclosure on the home of David and Annette Chandler led to this professional grievance").

{¶ 16} Early in 2006, David and Annette Chandler fell behind on mortgage loan payments for a house they had occupied since 1989. On May 26, 2006, Wells Fargo Bank commenced a foreclosure action in the Warren County

Court of Common Pleas. After receiving a mailing from FAI, the Chandlers became customers of FAI. On June 13, 2006, they signed a standard "Mediation Agreement" with FAI. The Chandlers made two payments of $450 to FAI for FAI's services — the first on June 22, 2006, in conjunction with the signing of the agreement, and the second on September 14, 2006.

{¶ 17} Daniel B. Jones signed the agreement on behalf of FAI, but later, Lance Trester became involved in the Chandler foreclosure. As supervisor of operations, he was aware of the Chandler case and subsequently spoke several times with Mr. Chandler on the phone.

{¶ 18} By letter dated August 3, 2006, FAI told the Chandlers that an attorney had "filed a plea and answered" in the foreclosure action. But on August 8, 2006, upon motion of the plaintiff, the common pleas court entered a default judgment against the Chandlers. The order specifically stated that the Chandlers were "in default of Answer or other pleading." The court entered an order that the Chandlers' home be sold on August 24, 2006.

{¶ 19} The Chandlers learned that their home was to be sold by reading the newspaper. On or about October 6, 2006, Alexakis contacted attorney Willard concerning the case, and Willard filed a motion to strike the complaint. Willard informed Alexakis that the plaintiff would not stop the sale. The attorney had no further involvement with the case. The home was sold at a sheriff's sale on October 23, 2006.

*FAI's handling of foreclosure No. 2*

{¶ 20} In 2005, a homeowner who had first occupied his home in 1988 refinanced the house with an adjustable-rate-mortgage loan. Beginning early in 2006, the rising monthly interest charges on the mortgage loan made it difficult for the homeowner to remain current with his payments. The homeowner's attempts to work out a new payment schedule with the lender, Wells Fargo, proved fruitless. Subsequently, in March 2006, FAI contacted the homeowner

through a letter from Lance Trester indicating the danger of foreclosure. In telephone conversations, Lance Trester assured the homeowner that FAI had a high success rate and could stave off foreclosure. The homeowner signed a mediation agreement in April or May 2006, and Lance Trester advised him that he should stop making mortgage-loan payments, that he should avoid filing for bankruptcy, and that the foreclosure had been "stopped" by attorneys who would be "taking care" of his case. The homeowner was told that the attorneys were "too busy" to communicate directly with him and that the attorneys were "across the hall" from the bank attorneys and would negotiate with the bank.

{¶ 21} Pursuant to the mediation agreement, the homeowner made two deposits totaling $4,250 (representing four months of mortgage-loan payments) in a special U.S. Bank account, and FAI withdrew $850 from that account as its fee. Lance Trester thereafter negotiated with the bank; during that time, the homeowner called Lance Trester twice per week and was told that attorneys were working on his case but that they did not have time to talk to him. By October 2006, the homeowner's calls went to Alexakis, who told the homeowner that he owned FAI and that negotiations with the lender were ongoing. The homeowner continued to try to speak with a lawyer, and a secretary at FAI finally gave him the name of attorney Willard. When the homeowner called Willard, Willard told him that he was not assigned to his case.

{¶ 22} In January 2007, the homeowner finally discovered that attorney David Patterson was assigned to his case. By phone, Patterson told the homeowner that an answer had been filed in the foreclosure case and that that was all that Patterson had been hired to do. Patterson also obtained for the homeowner a pay-off figure from Wells Fargo for back payments plus foreclosure costs that amounted to over $17,000, a figure that exceeded what the homeowner was able to pay.

**{¶ 23}** In March 2007, the homeowner filed for bankruptcy; at first, he attempted to retain the home by proceeding under Chapter 13, but later, the case was converted to a Chapter 7 liquidation proceeding, and the homeowner lost his home.

## Disposition

*Injunction against further unauthorized practice warranted*

**{¶ 24}** Based upon the facts in this case, we have no difficulty concluding that FAI, Alexakis, and Lance Trester engaged in the unauthorized practice of law. The general business plan adopted by FAI as well as the specific handling of the Chandler matter and the foreclosure against the second homeowner demonstrate that FAI, Alexakis, and Lance Trester (1) gave advice to homeowners in the context of pending or threatened foreclosure proceedings, in particular, advice concerning whether to continue making mortgage payments and the wisdom of legal alternatives such as bankruptcy, (2) made representations to creditors on behalf of homeowners facing foreclosure, and (3) evaluated for and with homeowners the terms and conditions of settlement in the foreclosure proceedings. We have held that the unauthorized practice of law, defined at Gov.Bar R. VII(2)(A) as "[t]he rendering of legal services for another by any person not admitted to practice in Ohio," includes those three activities when performed by nonlawyers. See *Ohio State Bar Assn. v Kolodner*, 103 Ohio St.3d 504, 2004-Ohio-5581, 817 N.E.2d 25, ¶ 15 (unauthorized practice of law includes "representation by a nonattorney who advises, counsels, or negotiates on behalf of an individual or business in the attempt to resolve a collection claim between debtors and creditors"); *Cincinnati Bar Assn. v. Telford* (1999), 85 Ohio St.3d 111, 113, 707 N.E.2d 462 (unauthorized practice of law includes a nonlawyer giving "legal advice to defendants in pending [foreclosure and debt-collection] lawsuits in an attempt to settle those cases"); *Cincinnati Bar Assn. v Mullaney*, 119 Ohio St.3d 412, 2008-Ohio-4541, 894 N.E.2d 1210, ¶ 20 ("laypersons engage

in the unauthorized practice of law" by "advising debtors of their legal rights and the terms and conditions of settlement in negotiations to avoid pending foreclosure proceedings"); *Cincinnati Bar Assn. v. Foreclosure Solutions, L.L.C.*, 123 Ohio St.3d 107, 2009-Ohio-4174, 914 N.E.2d 386, ¶ 22, 26.

{¶ 25} Indeed, the constrained role played by licensed attorneys in this case highlights the evils associated with laypersons providing legal services to the public: instead of personally evaluating the particular situations of their clients, the attorneys performed piecework by filing pleadings as part of the "single strategy that respondents offered as a resolution—to stall the pending foreclosure proceedings," while nonlawyers such as Alexakis and Lance Trester pursued the "negotiation of a settlement with the mortgagee." *Foreclosure Solutions* at ¶ 23. The record in this case indicates the possibility of far better outcomes for the former homeowners had they received the full attention of qualified, competent attorneys who abided by their ethical obligations. Instead, the former homeowners paid hundreds of dollars for which they received little in return. See *Willard*, 123 Ohio St.3d 15, 2009-Ohio-3629, 913 N.E.2d 960, ¶ 19, quoting *Mullaney*, 119 Ohio St.3d 412, 894 N.E.2d 1210, at ¶ 23 (lawyer who worked with FAI "intentionally fail[ed] to seek the lawful objectives of his client" by " 'surrendering [his] professional judgment' " to FAI); *Patterson*, 124 Ohio St.3d 93, 2009-Ohio-6166, 919 N.E.2d 206, ¶ 8–32.

{¶ 26} Because we find that respondents engaged in the unauthorized practice of law, we adopt the board's recommendation and enter an injunction against each of the respondents, forbidding any further violation.

*Civil penalties justified*

{¶ 27} We now turn to the board's recommendation that civil penalties be assessed against respondents. Gov.Bar R. VII(8)(B) authorizes the imposition of such penalties in an amount up to $10,000 per offense based upon consideration of relevant factors, four of which are enumerated.

{¶ 28} 1. Degree of cooperation. Respondent Lance Trester actively participated and cooperated in the proceedings by entering into stipulations with relator and appearing and testifying at the hearing before the panel. By contrast, respondents Alexakis and FAI did not participate or cooperate, apart from Alexakis's filing a pro se answer to the complaint.

{¶ 29} 2. Number of violations. The record documents FAI's handling of the Chandler and the other homeowner's matters, but otherwise, the evidence is inconclusive as to the total number of customers, the services they received, and what harm they suffered.

{¶ 30} 3. Flagrancy. Respondents made damaging and misleading representations to the Chandlers and the second homeowner during their foreclosure cases. For example, respondents indicated in correspondence to Mr. Chandler that an attorney had filed an answer and that the Chandlers had time to get their affairs in order, but in fact, no answer had been filed, and default judgment was entered against the Chandlers a mere five days after the correspondence. Respondents also accepted a fee from the Chandlers after the default. As to the second homeowner, respondents indicated to him that his foreclosure had been "stopped," a mischaracterization of the facts. In actuality, an attorney whom the second homeowner had never met filed an answer, and the foreclosure proceedings continued. FAI also indicated that attorneys were providing legal services to the Chandlers and the second homeowner but were "too busy" to speak with them, when in fact, the attorneys did no more than file basic pleadings. After that, the attorneys took no action in the cases.

{¶ 31} 4. Harm to third parties. Both the Chandlers and the second homeowner lost their homes in sheriff's sales after becoming customers of FAI.

{¶ 32} 5. Other factors. The board identified additional considerations as pertinent.

**{¶ 33}** a.  Pursuant to UPL Reg 400(F)(1), the board noted that relator sought joint and several liability against the three respondents for a civil penalty of $10,000 for each of the two specific instances of misconduct—the Chandler matter and the second-homeowner matter.

**{¶ 34}** b.  Pursuant to UPL Reg 400(F)(2), the board observed that the "imposition of civil penalties would further the purposes of Gov.Bar R. VII by deterring the establishment of additional 'foreclosure assistance' entities that provide unlicensed legal representation to often-desperate, vulnerable homeowners."

**{¶ 35}** c.  As aggravating factors pursuant to UPL Reg 400(F)(3), the board noted that FAI was a for-profit enterprise that collected fees from its customers and that Lance Trester and Kert Alexakis were paid employees, with Alexakis serving as an officer of FAI.

**{¶ 36}** d.  As mitigating factors pursuant to UPL Reg 400(F)(4), the board observed that Lance Trester stipulated that his conduct involved the unauthorized practice of law and that he had ceased providing foreclosure services.  The value of this factor is diluted by Lance Trester's admission that he opened a rival foreclosure-services business after leaving FAI's employ.  The board also noted some mitigating effect of Lance Trester's youth and inexperience and the fact that he left college at his father's request to take over operations at FAI.  As for FAI and Alexakis, the board found no mitigating factors.

**{¶ 37}** As a final matter, the board persuasively refuted Lance Trester's contention that no civil penalties were justified in light of our decision in *Foreclosure Solutions*, 123 Ohio St.3d 107, 2009-Ohio-4174, 914 N.E.2d 386, ¶ 29–35.  In *Foreclosure Solutions*, the parties stipulated that services had been provided to 12,000 to 14,000 Ohioans, and that, in part, formed the basis for the imposition of civil penalties.  Id. at ¶ 11, 30.  To be sure, the present case does not

quantify the total number of instances of unauthorized practice of law; but this case does present in detail the harmful effect of such violations in two specific instances. Accordingly, we agree with the board's analysis that civil penalties are warranted in this case.

{¶ 38} The board recommended that we impose a civil penalty of $7,500 per documented violation jointly and severally against Kert Alexakis and FAI, for a total penalty of $15,000. In light of the mitigating factors previously discussed, the board recommended a civil penalty of $2,500 per documented violation against Lance Trester, for a total penalty of $5,000. No objections have been filed to the penalties, and we now adopt the board's recommendation.

### Conclusion

{¶ 39} For all the foregoing reasons, FAI, Kert Alexakis, and Lance Trester are enjoined from further acts constituting the unauthorized practice of law. In addition, a civil penalty of $15,000 is imposed jointly and severally against FAI and Alexakis, and a civil penalty of $5,000 is imposed against Lance Trester. Costs are taxed to respondents.

Judgment accordingly.

BROWN, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Heather Hissom, Assistant Disciplinary Counsel, for relator.

Frost, Brown, Todd, L.L.C., and James Frooman, for respondent Lance Trester.

_____