**In the Matter of Gary L. DILK, Respondent.**

No. 49S00–0911–DI–534.

Supreme Court of Indiana.

Feb. 10, 2014.

## PUBLISHED ORDER FINDING MISCONDUCT AND IMPOSING DISCIPLINE

Upon review of the report of the hearing officer, the Honorable Dan E. Marshall, who was appointed by this Court to hear evidence on the Indiana Supreme Court Disciplinary Commission's "Verified Complaint for Disciplinary Action," and the briefs of the parties, the Court finds that Respondent engaged in professional misconduct and imposes discipline on Respondent.

**Procedural background:** The Commission filed its "Verified Complaint for Disciplinary Action" on November 23, 2009. As later amended, it charges nine counts of misconduct. Counts 1–3 concern Respondent's representation of clients referred to him by Foreclosure Solutions, LLC

("Foreclosure Solutions"). Counts 4–8 concern his representation of clients referred to him by other organizations. All of these organizations ("Foreclosure Assistance Entities") were for-profit entities offering assistance to homeowners in negotiations to avoid foreclosure in actions brought in Indiana. Count 9 involves Respondent's serving as "of counsel" in Indiana foreclosure actions for an Ohio law firm.

On October 25, 2013, the hearing officer filed his report entitled "Findings of Fact and Conclusions of Law" ("Report"). In briefing to this Court, neither party argues that the hearing officer's findings of fact should be disturbed, and thus we adopt them as the Court's. Respondent does not deny at this point that he violated the rules charged. The major issue is what discipline the Court should impose.

**Facts:** Between 2005 and 2008, Respondent accepted approximately 2,675 referrals from Foreclosure Solutions, a for-profit Ohio LLC, at a standard rate of compensation of $125 to $150 per case, receiving approximately $380,100 during those years. In these actions, pursuant to instructions from Foreclosure Solutions, Respondent would typically enter an appearance, request an extension of time, file a general answer, provide updates and forward documents to Foreclosure Solutions or the clients by use of form letters, and refer any inquiries from the clients back to Foreclosure Solutions. His typical practice was to allow judgment to be entered without opposition or hearing. He would often advise the courts that he would not be attending the hearing and did not object to entry of judgment.

Respondent had no direct contact with many of his clients. If contacted by a client, he would advise them that his role was limited to monitoring and delaying the legal proceedings and keeping the parties and Foreclosure Solutions advised about what was occurring in the case. If not contacted by a client, he would not advise the client about his limited role. If a client contacted him about potential defenses, he would not accept the case or would take steps to withdraw his appearance. He followed the course of action decided upon by Foreclosure Solutions and rejected any clients who wished to divert from that course.

In one case that differed from the typical, the clients told Foreclosure Solutions that they were not behind in their mortgage payments and believed that their payments had been misapplied to another account, providing a detailed list of the payments. Foreclosure Solutions provided this information to Respondent, who requested documentation from the clients. After the clients provided partial documentation, Respondent made no attempt to conduct formal discovery to obtain further documentation. In response to the mortgage holder's summary judgment motion, he did not attempt to present the clients' testimony regarding their payments via affidavit. He testified that he did not believe his clients' statements and thought it would be improper to file an "unsubstantiated statement" in response to the summary judgment motion. On May 1, 2006, he sent a form letter to the clients informing them that summary judgment had been entered and that a sheriff's sale would be scheduled. His file contained bank statements and Western Union receipts substantiating the clients' list of payments, which he received and faxed to Foreclosure Solutions on May 17, 2006.

In representing clients referred to him by other Foreclosure Assistance Entities and in serving as "of counsel" in foreclosure actions for the Ohio law firm, Respondent essentially followed the same pattern

as he did in representing clients referred by Foreclosure Solutions.

Without the involvement of Respondent, the Foreclosure Assistance Entities could not have provided the services they offered to homeowners. Selling the assistance of an attorney to defend a foreclosure action was a necessary part of their business model.

The decision as to whether to attempt to negotiate with a mortgage lender, to file bankruptcy as early as possible, or to pursue another course of action is a complex matter. A debtor benefits from early advice from counsel in making this decision. The homeowners represented by Respondent did not receive early advice regarding available options but instead purchased the course of action offered for sale by the Foreclosure Assistance Entities. Through the use of form letters, Respondent raised the possibility of bankruptcy *after* a foreclosure judgment had been entered.

*Aggravating and mitigating facts.* The hearing officer found one fact in mitigation: Respondent has no disciplinary history. The hearing officer found the following facts in aggravation: (1) Respondent displayed dishonesty by repeatedly and disingenuously asserting that the homeowners were not his clients, asserting instead that the referring companies were his clients; and (2) Respondent showed a lack of insight into his professional responsibilities to the homeowners for whom he appeared as counsel, asserting that his professional duties were owed to the companies who hired him, not to homeowners.

**Violations:** The Court finds that Respondent violated these Indiana Professional Conduct Rules prohibiting the following misconduct:

1.4(a): Failure to reasonably consult with a client about the means by which the client's objectives are to be accomplished and failure to comply promptly with a client's reasonable requests for information.

1.4(b): Failure to explain a matter to the extent reasonably necessary to permit a client to make informed decisions.

1.8(f): Accepting compensation for representing a client from one other than the client which interfered with the lawyer's independence of professional judgment and with the client-lawyer relationship.

3.2: Failure to expedite litigation consistent with the interests of a client.

5.4(a): Improperly sharing legal fees with a nonlawyer.

5.4(c): Permitting a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services.

5.5(a): Assisting in the unauthorized practice of law.

7.3(e): Improperly accepting referrals from a lawyer referral service.

8.4(d): Engaging in conduct prejudicial to the administration of justice.

**Discipline:** Several of the Foreclosure Assistance Entities and other participating attorneys have been disciplined by the Supreme Courts of Ohio and Kentucky. *See Disciplinary Counsel v. Foreclosure Alternatives, Inc.,* 127 Ohio St.3d 455, 940 N.E.2d 971 (2010); *Cincinnati Bar Ass'n v. Harwood,* 125 Ohio St.3d 31, 925 N.E.2d 965 (2010); *Cincinnati Bar Ass'n v. Foreclosure Solutions, LLC,* 123 Ohio St.3d 107, 914 N.E.2d 386 (2009); *Disciplinary Counsel v. Willard,* 123 Ohio St.3d 15, 913 N.E.2d 960 (2009); *Kentucky Bar Ass'n v. Moeves,* 297 S.W.3d 552 (Ky.2009); *Cincinnati Bar Ass'n v. Mullaney,* 119 Ohio

St.3d 412, 894 N.E.2d 1210 (2008). In these cases, the Foreclosure Assistance Entities were enjoined from further acts constituting the unauthorized practice of law and assessed civil penalties of up to $50,000. The earliest of these cases was handed down on September 16, 2008; yet Respondent continued to accept referrals from one of the Foreclosure Assistance Entities as late as November 9, 2009.

The Ohio cases above note the vulnerability of the clients, who were in the foreclosure process and needed immediate, individualized legal assistance in their attempts to save their homes. Instead the Foreclosure Assistance Entities implemented a one-size-fits-all plan when they did not have the qualifications and training required of the legal profession and they were not constrained by the ethical standards with which lawyers must comply. *See Cincinnati Bar Assn. v. Foreclosure Solutions, LLC,* 914 N.E.2d at 390.

Respondent's misconduct was not an isolated, inconsequential lapse. By the end of 2008, foreclosure defense referrals constituted about half of his practice. According to the evidence, Respondent's misconduct affected close to 4,000 clients from 2005 through 2009. With a typical fee of $150 per case, it appears he received close to $600,000 from these clients over this five-year period. It appears that in many, if not most, of the cases, the Foreclosure Assistance Entity simply needed someone with a law license willing to enter an appearance and stall the foreclosure for a while. It is unclear how many clients might have been able to save their homes if they had engaged an attorney to give them individualized legal advice (e.g., whether the home could be retained under a Chapter 13 bankruptcy plan). The parties cite to no evidence regarding whether Respondent has made any restitution of the fees he received for his extensive involvement in the practices he now does not dispute were prejudicial to the administration of justice.

Suspension of six months with automatic reinstatement was earlier proposed by a conditional agreement, which this Court rejected. *See* Admis. Disc. R. 23(11)(c). The Court's counterproposal for suspension of six months without automatic reinstatement was not accepted. Now, upon consideration of the fully developed record, the Court again concludes that Respondent should be suspended for at least six months and should then be permitted to resume practice only after obtaining approval for reinstatement.

For Respondent's professional misconduct, the Court **suspends Respondent from the practice of law in this state for a period of not less than six months, without automatic reinstatement, beginning March 24, 2014.** Respondent shall not undertake any new legal matters between service of this order and the effective date of the suspension, and Respondent shall fulfill all the duties of a suspended attorney under Admission and Discipline Rule 23(26). At the conclusion of the minimum period of suspension, Respondent may petition this Court for reinstatement to the practice of law in this state, provided Respondent pays the costs of this proceeding, fulfills the duties of a suspended attorney, and satisfies the requirements for reinstatement of Admission and Discipline Rule 23(4) and (18). Reinstatement is discretionary and requires clear and convincing evidence of the attorney's remorse, rehabilitation, and fitness to practice law. *See* Admis. Disc. R. 23(4)(b).

The costs of this proceeding are assessed against Respondent. With the acceptance of this agreement, the hearing officer appointed in this case is discharged.

The Clerk is directed to forward a copy of this Order to the hearing officer, to the parties or their respective attorneys, and to all other entities entitled to notice under Admission and Discipline Rule 23(3)(d). The Clerk is further directed to post this order to the Court's website, and Thomson Reuters is directed to publish a copy of this order in the bound volumes of this Court's decisions.

All Justices concur.