**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Cincinnati Bar Assn. v. Moore,* **Slip Opinion No. 2019-Ohio-2063.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-2063

CINCINNATI BAR ASSOCIATION *v.* MOORE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cincinnati Bar Assn. v. Moore,* Slip Opinion No. 2019-Ohio-2063.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct— Permanent disbarment.*

(No. 2018-1758—Submitted January 30, 2019—Decided May 30, 2019.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2017-035.

_____

**Per Curiam.**

{¶ 1} Respondent, Rodger William Moore, of Alexandria, Kentucky, Attorney Registration No. 0074144, was admitted to the practice of law in 2001. On June 25, 2015, we suspended him from the practice of law for two years, with the second year stayed on conditions, based on findings that he engaged in illegal activities that adversely reflected on his honesty and trustworthiness and knowingly

made false statements of material fact during the ensuing disciplinary investigation. *Cincinnati Bar Assn. v. Moore*, 143 Ohio St.3d 252, 2015-Ohio-2488, 36 N.E.3d 171. On October 19, 2016, we found Moore in contempt for continuing to practice law while his license was under suspension, revoked the stay, and ordered him to serve the entire two-year suspension. *See Cincinnati Bar Assn. v. Moore*, 147 Ohio St.3d 1405, 2016-Ohio-7371, 60 N.E.3d 1269. In addition, on January 25, 2019, we imposed an interim default suspension on Moore after the Board of Professional Conduct certified that he failed to answer a separate disciplinary complaint alleging that he continued to practice law while his license was under suspension. *Cincinnati Bar Assn. v. Moore*, __ Ohio St.3d __, 2019-Ohio-215, __ N.E.3d __. Both of these suspensions remain in effect.

{¶ 2} In August 2017, relator, Cincinnati Bar Association, charged Moore with multiple violations of the Rules of Professional Conduct arising from his efforts to charge and collect a clearly excessive fee after he told his client that he would represent her free of charge. Although Moore answered relator's complaint and was deposed, he did not appear at his disciplinary hearing before a panel of the board. Approximately six months after that hearing—but before the board issued its report and recommendation—Moore applied to retire or resign from the practice of law, but we denied his application. *In re Resignation of Moore*, 153 Ohio St.3d 1498, 2018-Ohio-4159, 108 N.E.3d 1106.

{¶ 3} After considering the testimony of the affected client and two additional witnesses, as well as 31 exhibits propounded by relator, the panel found that Moore charged a clearly excessive fee, engaged in dishonest conduct in his efforts to collect that fee, and engaged in conduct that was prejudicial to the administration of justice. Citing Moore's history of dishonest conduct and his willingness to engage in fraud and deception to obtain a personal financial advantage at the expense of a vulnerable client, the panel recommended that we permanently disbar him from the practice of law in Ohio. The board adopted the

panel's findings of fact, conclusions of law, and recommended sanction, and no objections have been filed.

{¶ 4} Based on our review of the record, we adopt the board's findings of misconduct and permanently disbar Moore from the practice of law in Ohio.

## Misconduct

{¶ 5} In late 2014, Shannon Marshall was a party to a divorce proceeding. Marshall qualified for legal aid, and an attorney was assigned to represent her. After Marshall expressed concerns about that attorney's ability to handle her case, a friend suggested that she speak with Moore and indicated that Moore would handle the case for free. Marshall contacted Moore.

{¶ 6} On December 8, 2014, Moore sent Marshall an e-mail stating that he would file a substitution of counsel in her divorce proceeding. He instructed Marshall to let her legal-aid attorney know that another attorney to whom her friend had referred her had "volunteered to take [her] case at no charge." Moore also sent a separate e-mail directly to the legal-aid attorney and Marshall, stating, "I am a friend and counsel to a close friend of Shannon's, and I have agreed to represent her at no charge." During the disciplinary hearing, Marshall testified that she was aware that if she retained a private attorney, legal aid would not continue to represent her. She stated that she would not have switched attorneys if Moore had not agreed to represent her for free.

{¶ 7} Apart from Moore's e-mails stating that he would represent Marshall at no charge, he did not provide her with a fee agreement or any other documents indicating whether he intended to charge her fees for his services. But less than four weeks after Moore commenced the representation, Marshall received an invoice for $9,500. Marshall testified that Moore explained to her that while he did not expect her to pay the invoice, he intended to seek an award of legal fees from her husband in the divorce proceedings. However, Moore never submitted any

invoices to the court or requested that his fees be assessed against Marshall's husband.

{¶ 8} According to Marshall, Moore began to complain that her case "was a lot of work." On April 20, 2015, he e-mailed her an $11,000 promissory note and requested that she sign it. Destitute and desperate to maintain Moore's representation, Marshall agreed that she would pay Moore over time in accordance with the promissory note—though she could not recall whether she signed it or just verbally agreed to its terms. She testified that with the divorce still pending, she would have done anything to protect herself and her young son.

{¶ 9} On June 26, 2015—just one day after we suspended Moore from the practice of law—Moore went to the courthouse for a hearing in Marshall's case. According to Marshall, as she and Moore were riding the elevator at the courthouse, he informed her that he had just been suspended and that he did not know whether he would be able to represent her at the hearing and then said, "[B]ut we're going to try." However, at the outset of the hearing, the presiding magistrate noted that Moore had been suspended and instructed him to leave the courtroom. The magistrate ultimately continued the hearing to permit Marshall to find alternative representation.

{¶ 10} Thereafter, Moore suggested to Marshall that Andrew Green, an attorney with whom he shared office space, could assume Marshall's representation and that Moore could assist him. With no funds to secure other counsel, Marshall agreed. Green did not provide a fee agreement or discuss fees with Marshall, and Marshall believed that Moore was paying Green for his services. When deposed, however, Green testified that he did not expect any fee for his services. He explained that he undertook the representation at no charge with the understanding that he would be compensated for his work in several other cases that Moore was transferring to him. He also suggested that the representation was a way for him to

help out one of Moore's friends and to compensate Moore for sharing his office space.

{¶ 11} Green's representation ended after the trial of Marshall's divorce in September 2015. In September 2016, Green filed a breach-of-contract action against Marshall on behalf of "Law Offices of Rodger W. Moore, LLC." Based on information provided by Moore, the complaint falsely alleged that Marshall had agreed to Moore's billing rate of $225 an hour and asserted a claim based on the promissory note that Moore presented to Marshall—even though the complaint alleged that Marshall had never signed the note. The complaint also alleged that Moore had made multiple requests for payment of his fee and that Marshall had refused to respond, but Marshall testified that she had not received any such demands. The complaint requested both compensatory and punitive damages, each in excess of $25,000, without identifying any factual or legal basis to support Moore's claims, and Marshall was forced to hire an attorney to defend against the complaint. The trial court eventually dismissed Moore's complaint without prejudice after he filed a pro se motion purporting to substitute himself for the original plaintiff ("Law Offices of Rodger W. Moore, LLC") as the real party in interest.

{¶ 12} The board found that by agreeing to represent Marshall for free and then demanding that she sign a promissory note obligating her to pay him for his representation, Moore charged a clearly excessive fee in violation of Prof.Cond.R. 1.5(a) (prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee). The board also found that he violated Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) by using a "bait and switch" tactic and by knowingly making false allegations of fact in the complaint he filed against Marshall. And finally, the board determined that Moore's conduct violated Prof.Cond.R. 8.4(d) (prohibiting a lawyer from engaging in conduct that is

prejudicial to the administration of justice), noting that the false and frivolous claims he asserted in his complaint caused Marshall to hire an attorney to defend herself and wasted court resources.[1]

{¶ 13} We adopt the board's findings of fact and misconduct.

## Sanction

{¶ 14} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 15} As aggravating factors, the board found that Moore has a prior disciplinary record, acted with a dishonest and selfish motive, engaged in a pattern of misconduct, committed multiple offenses, and caused harm to his client who was extremely vulnerable due to her financial status, the loss of her legal-aid attorney, and the circumstances of her divorce proceeding. *See* Gov.Bar R. V(13)(B)(1), (2), (3), (4), and (8). It also determined that no mitigating factors are present. *See* Gov.Bar R. V(13)(C).

{¶ 16} The board noted that in his initial disciplinary case, Moore engaged in criminal conduct involving fraud and misrepresentation and that in this case, he has demonstrated his willingness to harm a vulnerable client to obtain personal financial advantage. Indeed, Moore persuaded Marshall to irrevocably terminate the representation of her legal-aid attorney with the promise that he would represent her for free. Once she was entirely at his mercy, Moore demanded that she pay him for the same services he had agreed to provide for free. And after Marshall failed to remit payment, Moore filed suit and asserted false and frivolous claims against her. Moore's failure to attend the hearing in this case and his subsequent attempt

---

1. The hearing panel unanimously dismissed three other alleged rule violations based on the insufficiency of the evidence. *See* Gov.Bar R. V(12)(G).

to surrender his license convinced the board that he has no intention of correcting his behavior or returning to the practice of law.

{¶ 17} We have consistently observed that "in determining the appropriate length of the suspension and any attendant conditions, we must recognize that the primary purpose of disciplinary sanctions is not to punish the offender, but to protect the public." *Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 283, citing *Ohio State Bar Assn. v. Weaver*, 41 Ohio St.2d 97, 100, 322 N.E.2d 665 (1975). In *Columbus Bar Assn. v. Nyce*, 152 Ohio St.3d 501, 2018-Ohio-9, 98 N.E.3d 226, we determined that an attorney was " 'no longer fit to practice a profession grounded on trust, integrity, and candor' and that the only way to ensure the protection of the public [was] to permanently disbar him," *id.* at ¶ 40, quoting the board's report. Believing that "[Moore], like Nyce, is incapable of exhibiting the trust, integrity, and candor upon which the profession is grounded," the board recommends that Moore be permanently disbarred for his misconduct.

{¶ 18} Having considered the predatory nature of Moore's conduct in this case, the disturbing escalation of his dishonest conduct since we last disciplined him, the numerous aggravating factors and complete absence of any mitigating factors, and Moore's evident contempt for the disciplinary process, we agree with the board's assessment that Moore is no longer fit to practice law in this state and that permanent disbarment is necessary to protect the public from future misconduct. We therefore adopt the board's recommended sanction of permanent disbarment.

{¶ 19} Accordingly, Rodger William Moore is permanently disbarred from the practice of law in Ohio. Costs are taxed to Moore.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

_____

The Abrams Law Firm, L.L.C., and Laura A. Abrams; Dressman, Benzinger, LaVelle and Kelly Schoening Holden; and Edwin W. Patterson III, Bar Counsel, for relator.

Rodger William Moore, pro se.

_____