**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Cincinnati Bar Assn. v. Begovic,* **Slip Opinion No. 2019-Ohio-4531.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-4531

CINCINNATI BAR ASSOCIATION *v.* BEGOVIC.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cincinnati Bar Assn. v. Begovic,* Slip Opinion No. 2019-Ohio-4531.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct and the Rules for the Government of the Bar—One-year suspension, with six months stayed on conditions—Two years of monitored probation upon reinstatement.*

(No. 2019-0220—Submitted March 27, 2019—Decided November 6, 2019.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2018-023.

_____

**Per Curiam.**

**{¶ 1}** Respondent, Michael Joseph Begovic, Attorney Registration No. 0096103, last known address in Cincinnati, Ohio, was admitted to the practice of law in Ohio in November 2016.

**{¶ 2}** In a formal complaint certified to the Board of Professional Conduct on May 11, 2018, relator, Cincinnati Bar Association, charged Begovic with violating one provision of the Rules for the Government of the Bar and seven provisions of the Rules of Professional Conduct. All the charged misconduct relates to Begovic's association with Rodger W. Moore, Attorney Registration No. 0074144, from January to May 2017. During the four months of Begovic's association with Moore, Moore was under suspension from the practice of law, and the most serious misconduct charged is that Begovic aided Moore in the unauthorized practice of law.[1]

**{¶ 3}** The parties submitted written stipulations of facts and numerous exhibits for the board's consideration. A three-member panel of the board conducted a hearing, at which Begovic testified. Although Begovic initially contested most of the alleged violations, by the end of the hearing, he admitted that he had committed all eight alleged violations. After the hearing, the parties also stipulated to certain mitigating factors.

**{¶ 4}** Based on the stipulations, the testimony of Begovic both at the hearing and at his deposition, and the exhibits, the panel made findings of fact and drew conclusions of law. The panel found that Begovic had failed to register his association with Moore—a suspended attorney—with the Office of Disciplinary Counsel, aided Moore in the unauthorized practice of law, failed to keep his clients reasonably informed, failed to obtain his clients' informed consent when required, failed to make certain required disclosures to his clients, and improperly shared

---

1. We originally suspended Moore from the practice of law on June 25, 2015, for a term of two years with one year stayed on conditions. *Cincinnati Bar Assn. v. Moore*, 143 Ohio St.3d 252, 2015-Ohio-2488, 36 N.E.3d 171. Subsequently, on October 29, 2016, we found Moore in contempt for continuing to practice law while his license was under suspension; we therefore revoked the stay and ordered him to serve the entire two-year suspension. *See* 147 Ohio St.3d 1405, 2016-Ohio-7371, 60 N.E.3d 1269. Most recently, in the context of a later disciplinary proceeding, we permanently disbarred Moore from the practice of law in Ohio effective May 30, 2019. *Cincinnati Bar Assn. v. Moore*, 157 Ohio St.3d 24, 2019-Ohio-2063, 131 N.E.3d 24.

legal fees with a nonlawyer. The panel then considered multiple mitigating and aggravating factors and recommended a one-year suspension with six months stayed on conditions and two years of monitored probation after reinstatement.

{¶ 5} The board adopted the panel's findings and conclusions and recommended sanction, with the additional provision that Begovic should pay the costs of these proceedings. Neither party filed objections to the board's report.

{¶ 6} We agree with the board's findings of fact and conclusions of law, and we adopt the board's recommended sanction.

## I. MISCONDUCT

### A. Background

{¶ 7} Shortly after his admission to the practice of law in Ohio, Begovic contacted Rodger Moore in response to an advertisement for an entry-level attorney posted on a law-school website. Begovic had two interviews with Moore, and during the second interview, Moore told Begovic that he was a suspended attorney but that he would be reinstated in June 2017. Begovic testified that Moore told him that because of Moore's suspended status, Begovic would be "working as a 1099 contractor for the Moore Business Advisory Group as opposed to working directly with [Moore] as an employee or with his firm." According to Begovic, Moore told him that he had formed the Moore Business Advisory Group after his suspension went into effect and that he still had "a good relationship with his clients."

{¶ 8} Moore offered Begovic the entry-level-attorney position, and Begovic accepted. The offer was for an annual compensation of $48,000, regardless of his workload or success in handling cases. Additionally, Moore agreed to pay Begovic's Kentucky bar-admission fee and for his malpractice insurance.

{¶ 9} Moore provided Begovic with an office in Cincinnati. The signage for the office did not say "Moore Business Advisory Group" but rather "Law Offices of Andrew Green and Rodger Moore." Additionally, Moore provided office furniture, Internet access, access to an electronic legal database, and an office

telephone. Begovic used Moore's credit card and checking accounts to pay business-related expenses, and Moore paid Begovic's continuing-legal-education and travel expenses.

{¶ 10} Begovic officially began working in this position in mid-February 2017. Before that, on January 31, he applied for membership in the Cincinnati Bar Association and indicated on the application that he worked for "The Moore Law Firm." At Moore's instruction, he also filed notices of substitution of counsel in several cases in January, before his February start date. Begovic terminated his working relationship with Moore on May 14 or 15, 2017, as a result of the Cincinnati Bar Association's investigation in this matter. At that time, he filed numerous notices of withdrawal as counsel, but he did not inform the clients that he was no longer working on their behalf.

*B. Begovic failed to register his professional association with Moore*

{¶ 11} Despite knowing that Moore was under suspension when he began his working relationship with him, Begovic failed to register that relationship with the Office of Disciplinary Counsel as required by Gov.Bar R. V(23)(C) (requiring an attorney to register any employment, contractual, or consulting relationship with a disqualified or suspended attorney with the Office of Disciplinary Counsel before commencing such a relationship). The board was therefore justified in finding a violation of that rule.

*C. Begovic assisted Moore in the unauthorized practice of law*

1. Begovic continually held himself out as associated with

"The Moore Law Firm"

{¶ 12} Although Begovic testified that he had been hired to provide services in connection with the Moore Business Advisory Group, Begovic had identified himself on 35 court filings and multiple e-mails to opposing counsel as working for "The Moore Law Firm" or the "Law Offices of Rodger Moore." Begovic offered

no coherent explanation for his having identified himself as part of a law firm headed by Moore.

{¶ 13} Moreover, Begovic admitted that in obtaining professional-liability insurance in February 2017, he was told by the insurer that under the policy, he had to practice "as an individual entity and not under the name 'The Moore Advisory Group LLC' " and that he also had to make clear to clients that he was an individual practitioner and not an employee of that organization. Begovic admitted that he had failed to comply with the insurer's requirements.

### 2. Moore's involvement in collection work for PHI Air

{¶ 14} The majority of Begovic's work in association with Moore consisted of collection work for PHI Air Medical, L.L.C. On Moore's instruction, Begovic filed a substitution of counsel in at least 14 such cases, stating that he worked for the Moore Law Firm and that he had replaced attorney Andrew Green as counsel for PHI Air.

{¶ 15} Moore directly participated in litigating at least some of the PHI Air cases. In one case, Begovic permitted Moore to participate in a telephone conference with opposing counsel, and during that conference, he referred to Moore as his supervisor. And in relation to that same case, on five occasions, he permitted Moore to independently communicate by e-mail with opposing counsel concerning settlement negotiations and discovery issues. In another case, he permitted Moore to participate in a case-management conference by telephone to discuss settlement and discovery issues. During that conference, opposing counsel noticed a second voice on the line with Begovic, and when the judge demanded to know who was on the call, Moore identified himself and stated that he was Begovic's supervisor. Begovic did not clarify his relationship with Moore during that call, nor did he inform the court that Moore was a suspended lawyer.

### 3. Moore's participation in the Beckelhymer matter

**{¶ 16}** On Moore's instruction, Begovic filed a notice of substitution of counsel on January 24, 2017, indicating that he was replacing Andrew Green in representing Tiffany Beckelhymer and that he was an attorney with "The Moore Law Firm." On March 15, 2017, Begovic and Moore attended the damages hearing in that case, and when the magistrate asked the people in the room to identify themselves, Moore identified himself and Beckelhymer's mother as "just spectators."

**{¶ 17}** Begovic conducted the questioning of the witnesses in the hearing. But the audio recording of the hearing shows that Moore did participate and represent Beckelhymer at various points during the proceeding. For example:

- In responding to a question from the magistrate as to whether anyone with an interest in the case was in the hall, Moore answered, "There is not anyone else out in the hall, but we have tried to contact the opposite side on many occasions and we've had absolutely no luck so it's highly unlikely they will be here."

- When the magistrate asked for medical records, Moore instructed Begovic, "Submit those."

- In answer to the magistrate's concern regarding Beckelhymer's ability to collect any judgment awarded, Moore said, "That's the next step."

- In response to the magistrate's questions regarding a missing medical bill, Moore assured the magistrate, "[W]e'll supplement the record with that as soon as possible, your honor."

**{¶ 18}** The board justifiably regarded Begovic's permitting Moore to directly participate in litigating cases and in discussions with clients and opposing counsel, and his repeatedly holding himself out as an associate of Moore's, as assisting Moore to practice law during Moore's suspension in violation of

Prof.Cond.R. 5.5(a) (prohibiting a lawyer from assisting another in practicing law in a jurisdiction in violation of the regulation of the legal profession).

*D. Begovic's failure to disclose his lack of professional-liability insurance*

{¶ 19} The record shows that Begovic obtained legal-malpractice insurance through the Ohio Bar Liability Insurance Company and that it became effective on February 9, 2017. And the stipulations identify "mid-February of 2017" as the time when Begovic began working in association with Moore. Thus, through most of Begovic's association with Moore he was covered by professional-liability insurance.

{¶ 20} But Begovic represented clients prior to the effective date of his insurance. Specifically, in January 2017, he filed substitution-of-counsel notices in the Beckelhymer case and at least six PHI Air cases. Begovic had no personal contact with those clients and failed to inform them that he did not carry professional-liability insurance. On these facts, the board was justified in finding violations of Prof.Cond.R. 1.4(c) (requiring a lawyer to inform a client if the lawyer does not maintain professional-liability insurance).

*E. Begovic's failure to communicate with PHI Air and to obtain its*
*informed consent to act on its behalf*

{¶ 21} Begovic stipulated that he did not have direct contact with PHI Air, that Moore was the contact person for PHI Air, and that all communications from PHI Air went to Moore, who conveyed them to Begovic and told Begovic what actions to take.

{¶ 22} By failing to directly interact with PHI Air, Begovic violated his duty to inform the client of any decision or circumstance with respect to which the client's informed consent was required and the duty to keep the client reasonably informed. Accordingly, the board was justified in concluding that Begovic violated Prof.Cond.R. 1.4(a)(1) (requiring a lawyer to inform the client of any decision or circumstance with respect to which the client's informed consent is required) and

1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter).

### F. Begovic's violation of rules regarding fees for legal services

{¶ 23} Begovic's association with Moore involved his agreement to receive a set salary, to be paid biweekly. At no time during the association did Begovic himself enter into fee agreements with any of the clients for whom he provided legal services. The record establishes that Begovic was aware that Moore was being paid by Begovic's clients for Begovic's services but that Begovic never discussed legal fees with his clients or with Moore. Indeed, Moore alone handled the fee relationship with the clients, and Begovic accounted for his time to Moore with a time sheet.

{¶ 24} From these facts it is clear that Begovic himself never communicated the nature and scope of his representation to his clients, nor did he discuss with them the basis or rate of the fee for which they would be responsible. The board was therefore justified in finding that Begovic violated Prof.Cond.R. 1.5(b) (requiring an attorney to communicate the nature and scope of the representation and the basis or rate of the fee and expenses within a reasonable time after commencing the representation).

{¶ 25} Additionally, the board was justified in regarding Begovic's salary agreement with Moore as violative of Prof.Cond.R. 1.8(f) (prohibiting a lawyer from accepting compensation for representing a client from someone other than the client unless the conditions in Prof.Cond.R. 1.8(f)(1), (2), and (3) are met). First, because Begovic did not himself communicate with the clients about fees, he lacked a sufficient basis for concluding that informed consent had been given to his being paid a salary by Moore for the legal services rendered by Begovic to the clients, and informed consent is required by Prof.Cond.R. 1.8(f)(1). Moreover, even if Begovic had obtained consent, it appears that the other conditions of the rule were not satisfied. *See* Prof.Cond.R. 1.8(f)(2) (there must be "no interference with the

8

lawyer's independence of professional judgment or with the client-lawyer relationship"); 1.8(f)(3) (information relating to representation of the client must be protected as required by Prof.Cond.R. 1.6).

{¶ 26} The board also found a violation of Prof.Cond.R. 5.4(a) (prohibiting a lawyer from sharing legal fees with a nonlawyer, except in circumstances not present in this case). Although Begovic received a fixed salary from Moore, the record raises the inference that Moore paid Begovic's salary out of fees that Moore collected from the clients for Begovic's work. And although there is no specific evidence as to Moore's arrangements with the clients, and no documentation of any amounts paid by them to Moore, Begovic stipulated to the violation based on his own understanding of the relationship. We therefore uphold the board's finding of a violation of Prof.Cond.R. 5.4(a).

{¶ 27} In sum, the board found and we agree that Begovic violated Gov.Bar R. V(23)(C) and Prof.Cond.R. 1.4(a)(1), 1.4(a)(3), 1.4(c), 1.5(b), 1.8(f), 5.4(a), and 5.5(a).

## II. SANCTION

### A. Mitigating and aggravating factors

{¶ 28} As for mitigating factors, the board accepted the parties' stipulation that Begovic had no prior disciplinary record, although it also noted that Begovic had been admitted to the practice of law a mere three months before beginning his association with Moore, *see* Gov.Bar R. V(13)(C)(1); that Begovic lacked a dishonest or selfish motive in connection with his violations, *see* Gov.Bar R. V(13)(C)(2); and that Begovic was cooperative throughout the proceedings, *see* Gov.Bar R. V(13)(C)(4).

{¶ 29} With respect to aggravating factors, the board found that Begovic had admitted committing multiple violations of the Rules of Professional Conduct. *See* Gov.Bar R. V(13)(B)(4). Then the board found additional aggravating factors, which we summarize as follows:

- Although toward the end of the hearing Begovic stipulated to all the alleged rule violations, he persisted in failing to accept responsibility for his misconduct. Begovic, citing naivete and poor judgment, continued to state, as if it were fully exonerating, that he "simply did not realize" that he was violating the professional-conduct rules. In his posthearing brief, Begovic admitted violating the rules but said the violations resulted from his having "placed himself in a bad position" and argued that his failure to recognize that his conduct was assisting an unlicensed attorney to practice "should not be treated the same as that of the unlicensed attorney engaging in the unauthorized practice of law."

- Begovic failed to appreciate the wrongful nature of his conduct, *see* Gov.Bar R. V(13)(B)(7), seeming to view his violations as essentially technical rather than substantial. And until the hearing, he denied having committed any of the charged violations. At the start of the hearing, Begovic stipulated to only two violations, and at the end of the hearing, when he finally did stipulate that he had violated all the cited provisions, Begovic stated, "I shouldn't have defended my conduct on the basis that while it may have been a *borderline* violation, it wasn't an actual violation * * *." (Emphasis added.)

- By assisting Moore in the unauthorized practice of law, Begovic harmed the public. And in filing notices of withdrawal in multiple cases without any client consultation, without providing for the disposition of the clients' files, and without regard for the need to protect the clients' position in any pending litigation, Begovic harmed his clients, *see* Gov.Bar R. V(13)(B)(8).

- During the course of his association with Moore and even during the various stages of the disciplinary proceeding, Begovic remained willfully ignorant of his own professional obligations in light of Moore's suspension. Begovic

failed to make any effort to determine whether his relationship with Moore was subject to any special rules or oversight and did not even look into the reasons for Moore's suspension.

{¶ 30} We agree with the board's findings of mitigating and aggravating factors.

*B. The propriety of the recommended sanction*

{¶ 31} When imposing a sanction for attorney misconduct, we consider all the relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 32} Begovic has advocated for a public reprimand, and the board took note of two cases involving public reprimand as a sanction for assisting the unauthorized practice of law. In *Columbus Bar Assn. v. Gaba*, 98 Ohio St.3d 351, 2003-Ohio-1012, 785 N.E.2d 437, this court imposed a public reprimand and monitored probation on an attorney who admitted having permitted her clients to talk with nonlawyer staff members when the clients could have believed that they were speaking with licensed attorneys. And in *Disciplinary Counsel v. Willis*, 96 Ohio St.3d 142, 2002-Ohio-3614, 772 N.E.2d 625, this court imposed a public reprimand on an attorney who had "relied too heavily" on a former lawyer who had been disbarred in New York and was not licensed in Ohio. *Id.* at ¶ 3. Willis's misconduct included allowing the nonattorney, Bruce Brown, to attend depositions without clarifying Brown's nonattorney status to other counsel. He also absented himself from a deposition that he permitted Brown to attend, and during that deposition, Brown interposed objections during the examination of the deponent. In a separate instance, Willis virtually abandoned two clients to Brown's authority without mentioning that Brown was not licensed to practice law. During the course of the representation, Brown demanded payment of fees. The clients ultimately

asked Brown to withdraw as their attorney and sought resolution of a fee dispute with Brown through the Cleveland Bar Association.

{¶ 33} The present case differs from the cited public-reprimand cases in two ways. First, the record demonstrates that Begovic clearly lacks an understanding of his ethical duties as an attorney. Second, Begovic failed to acknowledge the wrongful nature of his conduct.

{¶ 34} Relator has advocated for a term suspension, and as a point of reference, the board took note of two cases in which this court imposed indefinite suspensions on attorneys who aided in the unauthorized practice of law. *Cincinnati Bar Assn. v. Fehler-Schultz*, 64 Ohio St.3d 452, 597 N.E.2d 79 (1992); *Cleveland Metro. Bar Assn. v. Axner*, 135 Ohio St.3d 241, 2013-Ohio-400, 985 N.E.2d 1257. For more specific guidance, the board then looked to two cases in which term suspensions were imposed. *Geauga Cty. Bar Assn. v. Patterson*, 124 Ohio St.3d 93, 2009-Ohio-6166, 919 N.E.2d 206; *Disciplinary Counsel v. Willard*, 123 Ohio St.3d 15, 2009-Ohio-3629, 913 N.E.2d 960. In each case, the attorney-respondent had teamed with a nonattorney organization that negotiated with lenders on behalf of customers who faced foreclosure. *Patterson* at ¶ 9, 13; *Willard* at ¶ 4, 5, 14 In each case, the attorney accepted a flat fee to represent the customers in the foreclosure cases, without meeting with the clients, without independently determining the pertinent facts of the cases, and without otherwise ascertaining client needs and objectives. *Patterson* at ¶ 9-11, 22-24; *Willard* at ¶ 6-8, 10, 18. Parallel violations were found in the two cases that included assisting a nonlawyer to engage in the unauthorized practice of law; sharing legal fees with a nonlawyer; and some combination of ethical violations involving failing to communicate with clients, handling legal matters without adequately preparing, and failing to seek the lawful objectives of the client.

{¶ 35} The attorney in *Patterson* had also neglected an entrusted probate matter. For his misconduct, we suspended the attorney for 18 months with six

months stayed on the condition of no further misconduct.  And in *Willard*, we suspended the attorney for one year with six months stayed on the condition of no further misconduct.

{¶ 36} We find that *Patterson* and *Willard* support imposing a term suspension, and we agree with the board's recommended sanction of a one-year suspension with six months stayed on conditions.  Additionally, Begovic's clear lack of understanding of his ethical obligations makes it appropriate to condition the stay on additional legal-ethics training as well as to impose a period of monitored probation after reinstatement.

### III. CONCLUSION

{¶ 37} We adopt the findings of fact, conclusions of law, and recommended sanction of the board.  Accordingly, we suspend Begovic from the practice of law for one year, with six months of that suspension stayed on the conditions that he engage in no further misconduct and that he complete a minimum of six hours of continuing legal education ("CLE"), in addition to the requirements of Gov.Bar R. X, on the topic of legal ethics prior to the end of his next CLE-compliance period—December 31, 2019.  If Begovic fails to comply with the conditions of the stay, the stay will be lifted and he shall serve the full one-year suspension.  Upon reinstatement to the practice of law, Begovic shall serve a two-year term of monitored probation pursuant to Gov.Bar R. V(21).  The monitor shall oversee his acclimation to the responsible and ethical practice of law and his implementation of proper law-office-management procedures, including those related to fee agreements, client communications, and client-trust-account management and recordkeeping.  Costs are taxed to Begovic.

Judgment accordingly.

O'CONNOR, C.J., and FRENCH, FISCHER, DONNELLY, and STEWART, JJ., concur.

KENNEDY, J., concurs in part and dissents in part, with an opinion joined by DEWINE, J.

_____

**KENNEDY, J., concurring in part and dissenting in part.**

**{¶ 38}** I agree with the majority's determination that an actual suspension of respondent, Michael Joseph Begovic, is warranted, and I concur in the following part of the court's opinion:

> [W]e suspend Begovic from the practice of law for one year, with six months of that suspension stayed on the conditions that he engage in no further misconduct and that he complete a minimum of six hours of continuing legal education ("CLE"), in addition to the requirements of Gov.Bar R. X, on the topic of legal ethics prior to the end of his next CLE-compliance period—December 31, 2019.  If Begovic fails to comply with the conditions of the stay, the stay will be lifted and he shall serve the full one-year suspension.  * * *  Costs are taxed to Begovic.

Majority opinion at ¶ 37.

**{¶ 39}** I dissent, however, from the part of the court's opinion imposing a two-year period of monitored probation to "oversee his acclimation to the responsible and ethical practice of law and his implementation of proper law-office-management procedures, including those related to fee agreements, client communications, and client-trust-account management and recordkeeping." *Id.* at ¶ 37.

**{¶ 40}** "Monitored probation is a valuable tool in Ohio's discipline system; it enables us to protect the public while educating the attorney and correcting the underlying misconduct." *Disciplinary Counsel v. Halligan*, ___ Ohio St.3d __, 2019-Ohio-3748, __ N.E.3d __, ¶ 41 (Kennedy, J., concurring in part and dissenting

in part). However, monitors are a precious finite resource, and we should "employ their services only when it is absolutely necessary: when the benefit of a monitor's service will educate the errant attorney and alleviate the underlying misconduct, while protecting the public." *Toledo Bar Assn. v. Manore*, __ Ohio St.3d. __, 2019-Ohio-3846, __N.E.3d __, ¶ 23 (Kennedy, J., concurring in part and dissenting in part).

{¶ 41} In my view, this case does not merit the use of a monitor, because Begovic's misconduct was the direct result of his deliberate acts. Begovic knew when he began working for Rodger Moore in mid-February 2017 that Moore was under an active suspension. Nevertheless, Begovic repeatedly assisted Moore in the unauthorized practice of law. Moore attended a court hearing with Begovic at which Moore participated and assisted Begovic in representing the client. In another matter, Begovic permitted Moore to independently communicate with opposing counsel regarding settlement negotiations and discovery matters. For one client, all communications went to Moore, who then conveyed them to Begovic along with instructions on what actions to take. Begovic also allowed Moore to participate in a telephone case-management conference.

{¶ 42} When Begovic filed his membership application with the Cincinnati Bar Association he indicated that he was working for "The Moore Law Firm" even though Moore had told him that he would be "working as a 1099 contractor for the Moore Business Advisory Group as opposed to working directly with [Moore] as an employee or with his firm." Even though he was advised by his professional-liability insurer that he had to make it apparent to his clients that he was an individual practitioner, he indicated on numerous court filings that he was affiliated with "The Moore Law Firm."

{¶ 43} Begovic's failing to register his relationship with Moore in violation of Gov.Bar R. V(23)(C), holding himself out as associated with "The Moore Law Firm," permitting Moore to directly participate in discussions with clients and

opposing counsel and in the litigation of cases, and allowing Moore to direct his handling of client matters and to respond to questions during courtroom proceedings were all deliberate acts.

{¶ 44} There is no amount of monitoring to "oversee his * * * implementation of proper law-office-management procedures, including those related to fee agreement, client communications, and client-trust-account management and recordkeeping," majority opinion at ¶ 37, that will protect the public, educate Begovic, or correct his misconduct, which stemmed from his "remain[ing] willfully ignorant of his own professional obligations in lights of Moore's suspension," *id.* at ¶ 29. If the disciplinary process and the required six hours of continuing legal education on the topic of legal ethics are not sufficient to educate Begovic and correct his behavior regarding engaging in a professional association with a suspended attorney, no amount of monitoring will acclimate him to the "responsible and ethical practice of law," *id.* at ¶ 37.

{¶ 45} Because the majority imposes a term of monitored probation, I concur in part and dissent in part.

DEWINE, J., concurs in the foregoing opinion.

_____

The Abrams Law Firm and Laura A. Abrams; Kelly A. Holden; and Edwin W. Patterson III, Bar Counsel, for relator.

Michael Joseph Begovic, pro se.

_____

16