[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Shaaban*, Slip Opinion No. 2023-Ohio-3671.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-3671

DISCIPLINARY COUNSEL *v*. SHAABAN.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Shaaban*, Slip Opinion No. 2023-Ohio-3671.]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including failing to act with reasonable diligence in representing a client— Two-year suspension with one year conditionally stayed.*

(No. 2023-0179—Submitted May 16, 2023—Decided October 11, 2023.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2022-026.

_____

**Per Curiam.**

{¶ 1} Respondent, Omar Fahmi Shaaban, of Toledo, Ohio, Attorney Registration No. 0085901, was admitted to the practice of law in Ohio in 2010. In a ten-count October 2022 amended complaint, relator, disciplinary counsel, alleged that Shaaban violated multiple professional-conduct rules in eight client matters

(seven foreclosure proceedings and one criminal case), shared legal fees with a nonlawyer, and failed to cooperate in the ensuing disciplinary investigation. Regarding the client matters, relator alleged, among other offenses, that Shaaban failed to act with reasonable diligence and promptness, failed to appear at multiple court hearings, failed to reasonably communicate with his clients, filed pleadings alleging defenses that he should have known did not apply to the facts of the case, and made false statements to courts and opposing counsel.

{¶ 2} The parties entered into stipulations of fact, and Shaaban admitted that he committed all of the charged misconduct. The parties also submitted stipulated aggravating and mitigating factors and 229 stipulated exhibits to the Board of Professional Conduct. Shaaban testified during a hearing before a three-member panel of the board. The panel issued a report finding by clear and convincing evidence that Shaaban committed the charged misconduct and recommending that he be suspended from the practice of law for two years with one year conditionally stayed. The panel further recommended that upon reinstatement, Shaaban be required to serve an 18-month period of monitored probation. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction.

{¶ 3} Shaaban objects to the board's recommended sanction, arguing that a fully stayed suspension is appropriate in this case. For the reasons that follow, we overrule his objection and adopt the board's findings of misconduct and impose its recommended sanction.

## MISCONDUCT

### Count One—Improper Fee Sharing with a Nonlawyer

{¶ 4} Since 2011, Shaaban has been a sole practitioner with a practice focused mainly on criminal defense and civil litigation. He has no support staff to assist him with his practice, and at the time of his disciplinary hearing, he had no office-management software.

{¶ 5} A friend introduced Shaaban to James Warsing around 2010. Warsing had never been licensed to practice law in Ohio. The parties have stipulated that Warsing served as the president of Ohio Mortgage Review and that he owned the company independently of any lawyer or law office. The company held itself out as providing services to defend against foreclosure actions. After their introduction, Shaaban and Warsing entered into an arrangement under which Warsing would refer legal clients to Shaaban. They maintained that arrangement until 2013 or 2014 and then resumed it around 2017 or 2018 until Warsing's death in June 2020.

{¶ 6} Under that arrangement, Warsing reviewed public records and contacted potential clients about their foreclosure cases. The written agreements that he and his clients entered into stated, "Provider [Ohio Mortgage Review] shall retain a competent attorney to represent Client, and shall pay all attorney fees agreed upon with said attorney." According to Shaaban, Warsing retained Shaaban's services on behalf of the clients pursuant to powers of attorney—though Shaaban did not require Warsing to produce copies of those documents. Shaaban had no written fee agreement with Warsing or any of the clients.

{¶ 7} There was no set fee amount or hourly rate for Shaaban's services. Warsing would accept payment from the clients—typically as a recurring monthly fee—and according to Shaaban, would pay Shaaban "however much he saw fit." In the beginning, Warsing made monthly deposits into Shaaban's bank account, often in cash, but the payments became more sporadic over time. Warsing did not give Shaaban any documentation or accounting of the fees, and Shaaban did not maintain any record of the payments he received. According to bank records obtained by relator, from November 2017 through July 2019, Warsing made payments to Shaaban totaling at least $4,200.

{¶ 8} The parties stipulated that Warsing conducted legal research and drafted legal documents on behalf of the clients he shared with Shaaban. During

his disciplinary hearing, Shaaban testified that Warsing would then send the legal documents to Shaaban for review and signature and then one of them would file the documents using Shaaban's e-filing information. However, Shaaban also admitted that he often failed to review those documents before Warsing filed them. Shaaban further admitted that Warsing sometimes used his information to file documents without his knowledge and that Warsing essentially took over his role as a lawyer.

{¶ 9} The parties stipulated and the board found that Shaaban's conduct charged in this count violated Prof.Cond.R. 5.4(a) (prohibiting a lawyer or law firm from sharing legal fees with a nonlawyer except in certain enumerated circumstances not applicable here). We adopt this finding of misconduct.

**Counts Two and Four through Eight—**

**The Neill, Zundel, Holliday, Novak, Daniels, and Mitchell Foreclosures**

{¶ 10} From 2017 through 2019, Warsing referred the following clients to Shaaban, who undertook to represent them in their foreclosure cases: Jeanne Neill (Count 2), Jody and Daniel Zundel (Count 4), Walter Holliday (Count 5), Victoria and Kenneth Novak (Count 6), Isaiah Daniels (Count 7), and Henry Mitchell (Count 8). Although Shaaban made appearances on behalf of each of these clients, he did not act with reasonable diligence in any of their legal matters, he failed to file answers on behalf of two of these clients, he failed to appear in court for scheduled hearings and/or conferences on behalf of five of these clients, he failed to provide these clients with copies of pleadings, motions, and court orders filed in their cases, and in at least four cases, he failed to respond to numerous communications from opposing counsel regarding important matters, including discovery and offers of settlement.

{¶ 11} Shaaban also failed to reasonably communicate with these clients. Although Shaaban met with Jody Zundel on one occasion, he did not return her subsequent phone calls and did not communicate with her again during the pendency of her case. Shaaban had no communication with Neill, Holliday, the

4

Novaks, or Daniels—and Neill was not even aware that Shaaban was representing her. Although Warsing had arranged for Shaaban to meet with Victoria Novak, Shaaban did not attend that meeting. Moreover, Shaaban failed to relay the lenders' inquiries about and/or offers of settlement or loan modification to Neill, Zundel, Holliday, and Mitchell. During his disciplinary hearing, Shaaban testified that he communicated settlement offers to Warsing and assumed that Warsing would communicate those offers to the clients.

{¶ 12} In addition to his failures to communicate with these clients, Shaaban engaged in multiple acts of dishonest conduct while representing them, including several false statements of fact to a court. For example, in Neill's case, Shaaban represented to the trial court that he needed to continue a hearing on the lender's motion for default judgment because Neill was "undergoing surgery the same day of the hearing," but he failed to comply with a court order that he provide documentation of the surgery. In his disciplinary case, he stipulated that Neill's surgery had been scheduled for the following month and that it did not preclude her appearance at the hearing he had sought to continue. Similarly, in the Novaks' case, Shaaban filed a motion to stay summary-judgment proceedings and/or to obtain an extension of time for the stated purpose of conducting discovery—when in fact, he had failed to issue written discovery requests in an editable format as required by Civ.R. 36(A) and had ignored opposing counsel's repeated requests that he provide an editable version of the document.

{¶ 13} Shaaban also made false representations to opposing counsel in the Neill case. At one point, Shaaban falsely stated that he had relayed the lender's settlement offer to Neill and needed several additional days to respond. Shaaban later told opposing counsel that he had attempted to contact Neill and that he believed that her phone number had been disconnected; he has since admitted that Neill's phone number was not disconnected during his representation.

{¶ 14} Furthermore, Shaaban made frivolous arguments in motions to dismiss the foreclosure complaints filed against Holliday, the Novaks, and Mitchell. In those motions, Shaaban asserted that the complaints should be dismissed based on the lenders' failure to comply with regulations of the United States Department of Housing and Urban Development ("HUD") that required mortgagees to take certain actions before accelerating a loan for default of payment. In his disciplinary-hearing testimony, however, Shaaban acknowledged that the motions drafted by Warsing or Warsing's paralegals were filed even though Shaaban had not investigated whether the loans in question were subject to HUD regulations—and that at the time of his disciplinary hearing, he knew that none of them were.

{¶ 15} In four of the cases at issue in these counts, the clients' loans were foreclosed and their homes were sold. After obtaining new counsel, two other clients reached agreements with their lenders.

{¶ 16} The parties stipulated and the board found that with respect to these six counts, Shaaban committed a total of 26 ethical violations, consisting of five violations of Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), four violations of Prof.Cond.R. 1.4(a)(1) (requiring a lawyer to promptly inform a client of any decision or circumstance with respect to which the client's informed consent is required), five violations of Prof.Cond.R. 1.4(a)(2) (requiring a lawyer to reasonably consult with a client about the means by which the client's objectives are to be accomplished),[1] two violations of Prof.Cond.R. 1.4(a)(3) (requiring a lawyer to keep a client reasonably informed

---

1. In relator's complaint, the parties' stipulations, and the board's report, four of these violations were reported numerically as violations of Prof.Cond.R. 1.4(a)(3) but were followed by the parenthetical description of the conduct required by Prof.Cond.R. 1.4(a)(2). Although Shaaban's complete failure to communicate with the clients at issue in each of those four counts could reasonably support violations of either rule, we have resolved these inconsistencies by giving effect to the description—rather than the rule number—used by the parties and the board. We have therefore classified them as violations of Prof.Cond.R. 1.4(a)(2).

about the status of a matter), one violation of Prof.Cond.R. 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with a client's reasonable requests for information), five violations of Prof.Cond.R. 1.4(b) (requiring a lawyer to explain a matter to the extent reasonably necessary to permit a client to make informed decisions about the representation), two violations of Prof.Cond.R. 3.1 (prohibiting a lawyer from asserting an issue in a proceeding unless there is a basis in law and fact for doing so that is not frivolous), one violation of Prof.Cond.R. 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal), and one violation of Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). We adopt these findings of misconduct.

### Count Three—The Smith Foreclosure

{¶ 17} In May 2019, U.S. Bank filed a foreclosure complaint against Rachel Smith ("Smith") and her husband, Douglas, in the Ashtabula County Court of Common Pleas. The Smiths met with Warsing after receiving a mailing from Ohio Mortgage Review. He told them that Shaaban would represent them in their foreclosure proceeding.

{¶ 18} In June 2019, a notice of appearance and motion to dismiss were filed on the Smiths' behalf, but those documents were not served on the bank's counsel. Although those documents contain Shaaban's signature block, including his address, telephone number, and email address as registered with the Office of Attorney Services, Shaaban denied that he had filed them. During his disciplinary hearing, Shaaban testified that Warsing had drafted and filed those documents— and others described below—in the Smiths' case without his knowledge.

{¶ 19} The court served Shaaban with a notice of a hearing on the Smiths' motion to dismiss at the address he had registered with the Office of Attorney Services; that notice was not returned to the court. After receiving notice of the

hearing, the bank's counsel attempted to contact Shaaban at his registered telephone number and email address but did not receive a response.

{¶ 20} Shaaban failed to appear at the hearing on the Smiths' motion to dismiss the foreclosure case—despite the fact that the court had served him with notice of the hearing. Although Smith attempted to reach Shaaban by telephone throughout the pendency of the foreclosure case, Shaaban never communicated with her. Consequently, the Smiths were unaware of the hearing and also failed to appear. The trial court denied the Smiths' motion to dismiss and later granted the bank's unopposed motion for default judgment and issued an order of sale.

{¶ 21} On November 1, 2019, a notice of appeal was filed on behalf of the Smiths in the Eleventh District Court of Appeals; a motion requesting that execution of the judgment be stayed pending appeal and that bond be waived was also filed in the trial court on that date. Although both filings identified Shaaban as counsel for the Smiths and bore his contact information, he later denied that he had filed them. The court of appeals sent Shaaban a notice informing him that a brief was due within 20 days of the filing of the record, and it later sent him a notice once the record had been filed. In mid-December, a motion for an extension of time bearing Shaaban's name and contact information was filed in the court of appeals on behalf of the Smiths. Although the court granted that motion and sent notice of its ruling to Shaaban, Shaaban never filed an appellate brief on behalf of the Smiths.

{¶ 22} In late January 2020, counsel for the bank filed a motion to dismiss the appeal based on the Smiths' failure to timely file an appellate brief and served it on Shaaban. On February 13, the court of appeals ordered the Smiths to file a merit brief within 14 days. The Smiths retained a new attorney, who attempted to contact Shaaban but did not receive a reply. After the new attorney filed a notice of appearance and substitution of counsel and an appellate brief on behalf of the Smiths, the court of appeals reversed the trial court's judgment in part and

remanded the case for further proceedings. The Smiths ultimately reached an agreement with the bank, and the case was dismissed.

{¶ 23} The parties stipulated and the board found that Shaaban's conduct charged in this count violated Prof.Cond.R. 1.3, 1.4(a)(2), 1.4(a)(3), 1.4(a)(4), 5.5(a) (prohibiting a lawyer from practicing law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction or assisting another in doing so), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). In accord with *Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500, ¶ 21, the board found that Shaaban's conduct was sufficiently egregious to warrant the finding that his conduct violated Prof.Cond.R. 8.4(h). We adopt these findings of misconduct.

### Count Nine—Failure to Cooperate

{¶ 24} While deposing Shaaban in February 2022, relator asked him to provide copies of all emails he had sent to and received from Warsing. Shaaban stated that he would do so. Relator followed up with an email asking Shaaban to provide "copies of all emails that [he] sent to or received from James (Jim) Warsing from January 2017 through the time of his death." Relator also requested copies of Shaaban's bank statements showing all payments Shaaban received from Warsing—along with copies of all emails he received from several other people, including Smith and Zundel—during that time frame. Shaaban did not send any of the requested documents but instead emailed relator to ask how Zundel and one other person had become part of the disciplinary investigation.

{¶ 25} After Shaaban failed to respond to another email following up on relator's request, relator served him with a subpoena directing him to provide the requested documents on or before June 1, 2022. On May 31, Shaaban emailed relator copies of his bank statements and stated that he did not have any emails from three of the people identified in the subpoena. And he declined to provide any of

the emails he had exchanged with Warsing, claiming, "[T]hey are numerous and saving and printing every one of them is extremely time consuming, whereby dedicating the required time would be detrimental to current clients which may cause you to have legitimate allegations to investigate." Relator replied, noting Shaaban's failure to furnish copies of the Warsing emails and offering to send an investigator to take photographs of them. Shaaban never responded to that reply, nor did he comply with the subpoena demanding the Warsing emails.

{¶ 26} The parties stipulated and the board found that Shaaban's conduct charged in this count violated Prof.Cond.R. 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation).

## Count Ten—The Legeza Matter

{¶ 27} On October 27, 2020, Serena Legeza was charged in the Findlay Municipal Court with driving under suspension in violation of R.C. 4510.16(A), an unclassified misdemeanor. Two days later, Shaaban filed an entry of appearance in which he waived arraignment and entered a not-guilty plea on Legeza's behalf.

{¶ 28} After conducting two pretrial conferences by telephone, the court scheduled another pretrial for May 25, 2021, and issued a notice ordering Shaaban "to call [the] clerk's office at 419-424-7141 and ask to be transferred to [the] prosecutor" at the time of the pretrial. Shaaban failed to call in for the May 25 pretrial, and the parties have stipulated that because Legeza was represented by counsel, she was not required to participate in the pretrial. The trial court issued a notice rescheduling the pretrial with the same instruction for Shaaban to call the clerk's office and ask to be transferred to the prosecutor. After Shaaban failed to appear a second time, the court issued a bench warrant for Legeza's arrest. On Shaaban's motion, the court later withdrew the bench warrant and rescheduled the pretrial.

{¶ 29} The court conducted three additional pretrials before scheduling a plea hearing. Shaaban and Legeza appeared at that hearing and requested additional time for her to obtain insurance. They failed to appear at another rescheduled hearing, and the court issued a second bench warrant for Legeza's arrest. The court withdrew that warrant and rescheduled the plea hearing for January 11, 2022, after Shaaban filed a belated motion for a continuance in which he alleged that Legeza had been injured and could not appear and participate in the proceedings.

{¶ 30} After Shaaban and Legeza failed to appear for the January 11 plea hearing, the court issued an order for Shaaban to show cause why he should not be found in contempt for failing to appear for that hearing and the two most recent telephone pretrials. The court also issued a third bench warrant for Legeza's arrest. Legeza was arrested approximately one month later, given a recognizance bond, and ordered to appear in court on February 15, 2022, at 8:30 a.m.—just a half hour before Shaaban's show-cause hearing.

{¶ 31} Neither Shaaban nor Legeza appeared for Legeza's February 15 hearing, and Shaaban was almost a half hour late for his own show-cause hearing. When the court questioned Shaaban about his failure to appear for Legeza's hearing and his tardiness for his own hearing, Shaaban stated that he had driven from Toledo and had to drop a child off at daycare.

{¶ 32} In response to questioning about his failure to call in for the May 25, 2021 pretrial hearing, Shaaban told the court that he had not known that he needed to initiate the call, though he eventually acknowledged that he had been given clear instructions in the court's notice and that he had failed to follow them. He could give no reason for his failure to miss the second pretrial hearing. And when asked why he had failed to appear for the plea hearing, he stated that he had been waiting for Legeza to provide documentation to support a motion for a continuance— though he has since acknowledged that he had never filed a motion for a continuance and that the court had not continued the matter. The court ultimately

found that Shaaban had failed to show cause why he should not be held in contempt and that he obstructed the orderly administration of justice. The court therefore found him in contempt of court and ordered him to pay a $250 fine plus court costs.

{¶ 33} The court rescheduled Legeza's plea hearing for March 15, 2022. Approximately one hour before the hearing was scheduled to begin, Shaaban filed a motion to continue the hearing on the ground that Legeza could not speak properly due to her injury. Although the court had not yet ruled on that motion, neither Shaaban nor Legeza appeared for the March 15 plea hearing. The court ultimately denied the motion and issued a fourth bench warrant for Legeza's arrest. In early April, Shaaban filed a motion to withdraw the bench warrant. The court denied that motion but stated that it would withdraw the warrant if Legeza appeared with counsel to resolve the issue, which they did later that month. On May 31, 2022—more than 19 months after she was charged—Legeza entered a no-contest plea to the driving-under-suspension charge and was found guilty of that offense.

{¶ 34} The parties stipulated and the board found that Shaaban's conduct charged in this count violated Prof.Cond.R. 1.3, 3.4(c) (prohibiting a lawyer from knowingly disobeying an obligation under the rules of a tribunal), 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), and 8.4(h). The board also noted that Shaaban's conduct charged in this count was sufficiently egregious to justify finding the Prof.Cond.R. 8.4(h) violation. *See Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500, at ¶ 21. We adopt these findings of misconduct.

### RECOMMENDED SANCTION AND SHAABAN'S OBJECTION

{¶ 35} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

**{¶ 36}** The parties stipulated and the board found that three aggravating factors are present in this case—Shaaban engaged in a pattern of misconduct, committed multiple offenses, and caused harm to vulnerable clients. *See* Gov.Bar R. V(13)(B)(3), (4), and (8). Although the board found that Shaaban had failed to cooperate in relator's investigation of his misconduct, it did not identify that failure as a separate aggravating factor.

**{¶ 37}** The parties stipulated and the board found that Shaaban had no prior disciplinary record and that he had not acted with a dishonest or selfish motive, but the board attributed mitigating effect only to his clean disciplinary record. *See* Gov.Bar R. V(13)(C)(1). At Shaaban's request, the panel left the record open for two weeks after the hearing to allow him to submit character letters—but he failed to submit any character letters with his posthearing brief.

**{¶ 38}** Relator recommended that Shaaban be suspended from the practice of law for two years with 18 months conditionally stayed, whereas Shaaban argued that a fully stayed suspension was the appropriate sanction for his misconduct. After considering five cases cited by relator in support of his recommended sanction, the board recommends that we suspend Shaaban from the practice of law for two years with one year conditionally stayed. The board further recommends that upon reinstatement to the practice of law, Shaaban be required to work with a monitor appointed by relator to oversee his practice for a period of 18 months. Shaaban objects to the board's recommended sanction and renews his argument that a fully stayed suspension is the appropriate sanction for his misconduct; for the reasons that follow, we disagree.

## ANALYSIS

**{¶ 39}** In determining the appropriate sanction for Shaaban's misconduct, the board considered five cases that relator cited in support of his recommended sanction. In those cases, we imposed sanctions ranging from a six-month

13

suspension to an 18-month suspension with six months conditionally stayed for misconduct similar to Shaaban's.

{¶ 40} Two of those cases involved attorneys who entered into agreements to represent clients on behalf of WJW Enterprises, another organization operated by Warsing that purportedly helped customers save their homes from foreclosure. In *Disciplinary Counsel v. Stranke*, 110 Ohio St.3d 247, 2006-Ohio-4357, 852 N.E.2d 1202, Stranke agreed to represent WJW clients in bankruptcy proceedings. Although Stranke was not admitted to practice in the United States Bankruptcy Court for the Southern District of Ohio, he appeared in two proceedings in that court. He signed a bankruptcy petition and other documents prepared by WJW employees without reviewing the documents with his clients, and consequently, he failed to detect various errors and omissions and made several misrepresentations of fact to the court. And in each case, he failed to attend a creditors' meeting and failed to respond to the bankruptcy trustees' motions to dismiss.

{¶ 41} We found that Stranke violated ethical rules prohibiting the neglect of client matters, the sharing of legal fees with a nonlawyer, dishonesty and misrepresentation, and the practice of law in a jurisdiction in violation of the regulations of the profession. *Id.* at ¶ 8. In the presence of one aggravating factor and four mitigating factors, *id.* at ¶ 9, we suspended Stranke from the practice of law for six months, *id*. at ¶ 11.

{¶ 42} *Disciplinary Counsel v. Simonelli*, 113 Ohio St.3d 215, 2007-Ohio-1535, 863 N.E.2d 1039, involved another attorney who partnered with WJW Enterprises to represent three clients in bankruptcy proceedings. Simonelli neglected all three of those client matters. He spoke to just one of those clients by telephone before filing her bankruptcy petition, and he never spoke to the other clients during the representation. He filed three documents in court that contained false representations regarding his communication with his clients or his agreement to share compensation with WJW.

**{¶ 43}** Although the facts and misconduct in *Simonelli* were very similar to those of *Stranke*, there were more aggravating factors present in *Simonelli*. Citing Simonelli's insistence that he had done nothing wrong—and the presumption that an attorney's misconduct involving dishonesty, fraud, deceit, or misrepresentation calls for an actual suspension from the practice of law, *id.* at ¶ 29-30, citing *Disciplinary Counsel v. Beeler*, 105 Ohio St.3d 188, 2005-Ohio-1143, 824 N.E.2d 78, ¶ 44—we suspended Simonelli from the practice of law for one year with six months stayed on the conditions that he commit no further misconduct and work with a monitor during the stayed portion of his suspension, *id.* at ¶ 31.

**{¶ 44}** Shaaban objects to the board's reliance on *Stranke* and *Simonelli* on two grounds. First, Shaaban asserts that he did not engage in any dishonesty or misrepresentation as Stranke and Simonelli did. This assertion is false because Shaaban has stipulated—and we have found—that he engaged in dishonest conduct in the Neill case and that he made false statements of fact or law to a tribunal in the Novak case.

**{¶ 45}** Second, Shaaban asserts that *he* did not practice law in a jurisdiction in violation of the regulations of the profession as Stranke did. While that may be true, Shaaban has stipulated that he assisted Warsing in engaging in the practice of law in violation of the regulation of the legal profession and that he thereby violated Prof.Cond.R. 5.5(a)—i.e., he assisted Warsing in engaging in the unauthorized practice of law. He admitted that he had allowed Warsing to file court documents under his name and attorney number and that rather than review all the documents before they were filed, he "[p]retty much" rubber stamped them. He also testified that at some point, Warsing began to file documents without his knowledge. Although Shaaban acknowledged that he received court notices regarding those filings, he admitted that he had ignored them because he believed that another attorney was going to take over those cases.

**{¶ 46}** Moreover, Shaaban's misconduct far exceeds that of Stranke and Simonelli. Among other offenses, he neglected seven client matters and failed to communicate at all with six of his clients. He also failed to make scheduled court appearances on behalf of multiple clients, failed to attend scheduled hearings and/or conferences in five client matters, and failed to answer foreclosure complaints on behalf of two clients. And four of his clients lost their homes due at least in part to Shaaban's misconduct. All told, Shaaban has committed 38 rule violations in eight client matters, whereas Stranke and Simonelli committed four and six rule violations in just two and three client matters, respectively. On these facts, we find that Shaaban's objection to the board's reliance on *Stranke* and *Simonelli* lacks merit.

**{¶ 47}** The board also considered *Disciplinary Counsel v. Willard*, 123 Ohio St.3d 15, 2009-Ohio-3629, 913 N.E.2d 960. Like Shaaban, Willard partnered with a foreclosure-assistance service to represent clients in foreclosure proceedings. Although Willard represented 28 clients, he had discussions with only three or four of them. We found that Willard's association with the foreclosure-assistance service violated ethical rules prohibiting a lawyer from having a nonlawyer promote the use of a lawyer's legal services, forming a partnership with a nonlawyer to engage in the practice of law, aiding a nonlawyer in the unauthorized practice of law, and sharing legal fees with a nonlawyer. *Id*. at ¶ 12-15. We also found that Willard intentionally failed to seek the lawful objectives of his clients and that his failure to communicate with them meant that he was not adequately prepared to represent them. *Id*. at ¶ 18-19.

**{¶ 48}** We attributed aggravating effect to Willard's pattern of misconduct involving multiple offenses and found that the vulnerability and resulting harm to the victims of Williard's misconduct—which may have resulted in foreclosures on his clients' homes—was alone sufficient to outweigh four mitigating factors. *Id*. at ¶ 21, 23-24. We rejected the board's recommended sanction of a fully stayed one-

year suspension and imposed a one-year suspension with six months conditionally stayed. *Id*. at ¶ 2, 31.

{¶ 49} The board distinguished this case from *Willard*, noting that in addition to Shaaban's foreclosure-related misconduct, he also failed to cooperate in relator's investigation and disregarded court orders to the point that Legeza was arrested on a bench warrant.

{¶ 50} Shaaban challenges the board's reliance on his misconduct in the Legeza matter as a basis for its recommendation that he be required to serve actual time out from the practice of law. Shaaban has stipulated that several warrants were issued for Legeza's arrest as a result of his misconduct and that she was arrested on one of those bench warrants. But in his brief objecting to the board's recommended sanction, Shaaban attempts to disavow those stipulations and deny his responsibility for Legeza's arrest. He asserts that the bench warrant that resulted in Legeza's arrest was the result of Legeza's failure to appear at the January 11, 2022 plea hearing because he had given her notice of the date and time of the hearing. Shaaban further attempts to blame Legeza alone for her arrest by suggesting that her arrest arose from a felony charge filed in another jurisdiction. But there is no evidence in the record to support those claims. Furthermore, even if Shaaban's assertions were true, there is no dispute that his repeated neglect and disobedience of court orders resulted in the issuance of four bench warrants for Legeza's arrest in less than a year—and that his conduct was prejudicial to the administration of justice. The board's reliance on these factors to support its recommendation that Shaaban serve actual time out from the practice of law was not misplaced.

{¶ 51} The board considered two additional cases in which we imposed 18-month suspensions, with six months conditionally stayed, for misconduct bearing some similarity to Shaaban's. We imposed that sanction in *Geauga Cty. Bar Assn. v. Patterson*, 124 Ohio St.3d 93, 2009-Ohio-6166, 919 N.E.2d 206, on a twice-

disciplined attorney who mishandled a decedent's estate, failed to exercise independent professional judgment on behalf of clients who were facing foreclosure, and failed to reasonably communicate with his foreclosure clients.

{¶ 52} We also imposed that sanction (albeit with different conditions on the stay) in *Disciplinary Counsel v. Maley*, 119 Ohio St.3d 217, 2008-Ohio-3923, 893 N.E.2d 180. Maley failed to maintain a client trust account, commingled business and client funds, and negligently supervised his staff, thereby facilitating his secretary's unauthorized practice of law in more than 30 cases. In addition to the aggravating factors present in this case, Maley acted with a selfish motive and refused to acknowledge the wrongful nature of his conduct. *Id.* at ¶ 19. But in contrast to Shaaban—whose sole mitigating factor is his clean disciplinary record—Maley also exhibited a cooperative attitude toward the disciplinary proceedings and submitted numerous letters from elected officials, attorneys, and others attesting to his honesty, integrity, and good character. *Id.* We suspended Maley from the practice of law for 18 months with six months stayed on the conditions that he fully comply with rules governing the safekeeping of client funds and property and complete three hours of continuing legal education ("CLE") focused on ethics and professionalism. *Id*. at ¶ 23.

{¶ 53} In this case, the board acknowledged that Shaaban has no disciplinary record, has accepted responsibility for his misconduct by stipulating to the charged rule violations, and was feeling "overwhelmed" at the time of his misconduct. According to his testimony, his feeling overwhelmed related to his lack of support staff and to a longstanding immigration issue. The board also acknowledged Shaaban's testimony that he had reduced his caseload so that he would not miss so many notices and emails—though he explained that based on his income, case-management software was cost-prohibitive. But Shaaban also testified that at the time of his misconduct, the foreclosure cases he had received from Warsing constituted approximately 50 percent of his practice and that "the

main reason Jim Warsing came into the picture was because that was extra money for [Warsing] doing most of the work." For that reason, the board expressed concern that Shaaban would be willing to violate the professional-conduct rules when it would be profitable for him. Shaaban's explanation that "Warsing has died, and a similar engagement will never happen" offered little to ameliorate the board's concerns.

{¶ 54} Although Shaaban now asserts that he has obtained practice-management software and has attended seven hours of professional-conduct CLE since March 2022, there is no evidence in the record to support those claims. Furthermore, he has endeavored to disavow his stipulated misconduct in his brief objecting to the board's recommended sanction by (1) denying that he has engaged in dishonesty, fraud, deceit, or misrepresentation, (2) attempting to shift blame for Legeza's arrest from himself to Legeza, and (3) portraying himself as having been fully cooperative in relator's disciplinary investigation despite his stipulations to the contrary. Those actions do not inspire confidence that Shaaban has learned from his misconduct or that he is fully committed to conducting himself in an ethical and professional manner going forward.

{¶ 55} Based on the foregoing, we overrule Shaaban's objection to the recommended sanction. Having weighed Shaaban's significant acts of misconduct, the aggravating and mitigating factors, and our applicable precedent, we agree with the board's assessment that a two-year suspension, with one year conditionally stayed and an 18-month period of monitored probation, is the appropriate sanction in this case.

## CONCLUSION

{¶ 56} Accordingly, Omar Fahmi Shaaban is suspended from the practice of law in Ohio for two years with one year stayed on the condition that he engage in no further misconduct. If Shaaban fails to comply with the condition of the stay, the stay will be revoked and he will serve the full two-year suspension. Upon

reinstatement to the practice of law, Shaaban shall serve an 18-month period of monitored probation in accordance with Gov.Bar R. V(21) focused on general oversight of his practice. Costs are taxed to Shaaban.

Judgment accordingly.

KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, BRUNNER, and DETERS, JJ., concur.

————————————

Joseph M. Caligiuri, Disciplinary Counsel, and Michelle A. Hall and Karen H. Osmond, Assistant Disciplinary Counsel, for relator.

Omar Shaaban, pro se.

————————————